### BAUM v. RALEY.

1. FRAUD.—There is no fraud or deceit in a contract between parties capable of contracting, where no fiduciary relation exists, when no facts are concealed.
2. REMEDIES—FAILURE OF CONSIDERATION—MORTGAGES.—A mortgagor in *possession* of land cannot set up as a defense to mortgage for purchase money, failure of consideration, in that the title to the mortgaged lands is defective.
3. USURY.—Interest on interest after due is not usury when incorporated in the note, nor when interest is calculated on principal and included in the principal of the note.
4. EVIDENCE—PRIMA FACIE—MORTGAGES.—The execution and delivery to a party of a note and mortgage and his possession of them, are *prima facie* evidence of ownership.

Before KLUGH, J., Kershaw, February, 1898. Affirmed.

Foreclosure by Mannes Baum *v.* Ann M. Raley. The Circuit decree is as follows:

Charles Raley, about the year 1885, executed a mortgage of a tract of sixty-five acres of land, described in the complaint in this action, to H. Baum, and on December 27 of the same year the said Charles Raley died, leaving the mortgage unsatisfied. On the first Monday in December, 1886, under a power contained in the said mortgage, after advertisement, the mortgagee offered the land for sale, and it was bid in by him as agent for M. Baum, and title was made accordingly by said mortgagee, H. Baum, as attorney in fact of Charles Raley. At the time of the sale, J. R. Raley, a son and administrator of Charles Raley, was in possession of said land, and living thereon with his wife, who is the defendant in this action. Shortly after the said sale, J. R.

Raley began negotiations in behalf of his wife for the pur-chase of the said land; and about the 24th day of January, 1887, M. Baum, by H. Baum, attorney, executed a deed of conveyance of said tract of land to the defendant, Ann M. Raley, the wife of the said J. R. Raley, the consideration in the deed being stated to be the sum of $510.15.    This sale was made wholly on credit, and it seems to have been agreed that the purchase money was to be paid in three equal in-stalments, on the first day of November, 1887, 1888, and 1889, respectively.    Accordingly, on the same day, January 24, 1887, Ann M. Raley made her three sealed notes for the sum of $170.93 each, payable to the order of M. Baum, on the first day of November, 1887, 1888, and 1889, respectively, with interest on each from November 1, 1887, "at ten per cent. per annum, payable annually, until the whole be paid, interest to bear interest at same rate."    To secure the pay-ment of said notes, the defendant executed to M. Baum a mortgage of the said tract of 65 acres, and also of another tract containing 300 acres, both of which are described in the complaint.    The said deed of conveyance and the notes and mortgage were all parts of one transaction.    The notes aggregate the sum of $512.79, while the consideration of the deed is $510.15; and the difference, it is explained, was produced by including the fee for recording the mortgage in the amount of the notes.    The papers were all drawn at the same time, by the book-keeper of H. Baum, and were executed together.    The mortgage contains a general war-ranty, while the deed of M. Baum contains a clause of war-ranty only against himself and his heirs.    The book-keeper testifies that this difference occurred through his negligence in omitting from the written part of the deed the proper words to make a general warranty, and that Mr. Baum knew nothing about it.    On December 10th, 1888, Marga-ret J. Knight and Eady L. Jordan conveyed to Herman Baum their right, title, and interest in the aforesaid 65 acres, reciting in the deed that the land formerly belonged to their father, the late Charles Raley, and that their inter-

3—53

est therein was an undivided third each. This deed and its recitals are the only evidence that these parties had any claim to the land. By a deed dated December 15th, 1896, H. Baum conveyed this interest of Mrs. Knight and Mrs. Jordan to M. Baum. This last mentioned deed shows on its face that the date has been changed, the date first written being January 15, 1897. This latter date was subsequent to the commencement of this action. After the aforesaid conveyance to Ann M. Raley, she and her husband continued to live on the said tract of land, and live there now. She made numerous payments on her mortgage debt from time to time, the last one being made on February 8, 1893. Having failed to pay the debt, this suit was begun against her on December 23, 1896, for the foreclosure of her mortgage. In her answer, she sets up several defenses, as follows: First. That she was deceived and defrauded in the transaction, in that, relying on the assurance of the plaintiff, through his agent, Herman Baum, that he would give her a good title to the land, she did not consult counsel as to the title; that, being unable to read or write, and the papers not being read over to her, she was in ignorance that the deed did not contain a general warranty; and further, that the 300 acre tract of land was included in the mortgage without her knowledge or consent, and that she signed said mortgage in ignorance of the fact that it was so included. Second. That the consideration of her mortgage indebtednsss was the sixty-five acre tract of land conveyed to her by the plaintiff; that the title which plaintiff gave her was bad; that her husband was in possession of the land at the time when she bought, claiming an interest therein, and withheld the possession from her, so that she had never been in possession thereof; and that the consideration of her mortgage had thus failed. Third. That the contract contained in her notes and mortgage was usurious. Fourth. She sets up a counter-claim for the penalty imposed by law for the usurious interest which plaintiff is alleged to have charged and received. Fifth. By an amendment

to the answer by the master during the reference, she denies that the plaintiff is the owner of said notes and mortgage. And lastly, by another amendment so allowed also, she claims that all payments made by her on her said notes and mortgage should be repaid to her with interest. The cause was referred to the master, who has filed an elaborate report, in which he overrules all of said defenses, and it now comes on to be heard on exceptions to said report, filed by both plaintiff and defendant.

The defendant's exceptions raise all the issues presented as defenses by the answer. As to the first defense, that the defendant was deceived and defrauded, it is not claimed that there was any relation of confidence or trust between the parties. They were dealing at arms' length, each considering himself and recognized by the law as competent to contract. The defendant had every means usually employed to ascertain the validity of the title which she proposed to buy. More than that, she knew that the land had been the property of Chas. Raley at the time of his death, and she, or at least her husband, who acted for her in negotiating the purchase, knew that Baum's title was derived through the sale under the defunct power in Chas. Raley's mortgage. So the facts out of which the defects in Baum's title arose were in with her possession, and if she chose to rely on Baum's assurance that his title was good, that is her own lookout. The law does not make contracts for people who are capable of contracting for themselves; neither does it undertake to act as guardian for those who are presumed to be competent to take care of their own affairs. No concealment of the facts is shown as to this matter, nor as to the omission of the general warranty from the deed. This deed was delivered to the defendant, and was immediately recorded. So far as appears, it has been in her possession ever since, affording to her full opportunity to ascertain what it does not as well as what it does contain. If anything was omitted which it was her understanding of the agreement was to go in, certainly such

omission was not concealed from her by the plaintiff, and she could have taken such steps as were necessary to revise the deed. The same may be said of the inclusion of the 300 acre tract of land in the mortgage. Whether the paper was read to her, or whether she possessed the accidental acquirement of ability to read it herself, cannot affect this case. She appears to possess all the faculties of a person of ordinary intelligence, and must be presumed to have known that she would be bound by what she signed, in the absence of fraud or force. This paper was likewise recorded very shortly after its execution, and that circumstance must be held to rebut any suspicion of a design to conceal its contents from the defendant or any one else. The master rightly holds that fraud will not be presumed, but must be clearly proven. I am entirely satisfied with and approve his finding that there was no fraud or deception practiced.

Next, as to the defense of failure of consideration. There can be no question as to the defect in Baum's title. The sale under the power conferred in Chas. Raley's mortgage was ineffectual to pass the title, made as it was after the death of Chas. Raley, for the reason that the title had already passed by operation of law to his heirs, and for the further reason that the power itself not being coupled with an interest, did not survive. *Johnson* v. *Johnson*, 27 S. C., 313. The further ground on which it is sought to impeach the title of Baum, that the mortgage debt of Chas. Raley was paid, or its lien extinguished by the tender of the balance due thereon by his administrator, cannot be considered in this case, because it involves not simply the question of fact, but a matter of accounting also, which is impracticable here. The question involved in that matter could only be determined in an action to which both J. R. Raley and H. Baum were parties. Moreover, it is unnecessary to encumber this record with that contention; for if the fact in dispute were conceded, it would be but another reason for holding the power of sale extinguished, which was clearly extinct under the facts, about which there is no dispute. The de-

fendant alleges in her answer that J. R. Raley, her husband, was in possession of the premises in question at the time of her purchase from Baum; that he has since remained in possession, claiming to own an interest therein, and refuses to give possession to her. The last two allegations, that he claims ownership and excludes her from possession, are not sustained by the testimony. All the parts of the case go to negative them both. J. R. Raley was the active party in the purchase of the land from Baum for his wife. If there were a contention between him and her as to the ownership, he would be effectually estopped by his conduct in that transaction to claim any interest in the land, adversely to her. That he and she were in perfect harmony as to the possession, is clearly shown by the fact that he was her willing agent in making numerous payments on her notes and mortgage for the purchase money. That she made those payments, extending over a period of five or six years, and aggregating nearly $500, is sufficient evidence that she found no difficulty as to either ownership or possession. Besides, these allegations, if true, are in conflict with her former position that she was deceived and defrauded. I think the master is right in his conclusion as to her possession, and in his finding that she has not been evicted. Admitting that the title conveyed to Mrs. Raley is defective in the respects that the defendant claims that it is, and the fact being established that she is in the quiet possession of that which she took by such title, is there any ground to hold that the consideration of her notes and mortgage has failed? If the defects in the title were known to her at the time of the purchase, then she bought with her eyes open, assuming all risks, and could not plead failure of consideration, even if she had been evicted; still less so, if she is yet in the undisturbed possession and enjoyment of the land. We have seen that at least a part of the facts out of which the defects in Baum's title arose were within the personal knowledge of the defendant, and that all of them were fresh in the mind of her husband, who acted as her agent in this

purchase. She must, therefore, be presumed to have had notice of the defective title at the time when she took it. *Pritchett* v. *Spears*, 10 Rich., 293; *Walker* v. *Walker*, 17. S. C., 338. But, even if it be conceded that she was ignorant of the defects in the title, her plea of failure of consideration still cannot prevail. No fraud was practised upon her by the plaintiff. She has suffered nothing from the defective title. No one has sought to disturb her possession under it. The Court cannot undertake to say that any one will ever attempt to do so. Until that shall be successfully done, she can have no cause to complain that she did not get the land. Indeed, it is exceedingly improbable that her title now can ever be questioned; for at the time when this suit was brought, December 23, 1896, it wanted but a month of the time when the statute would have matured her title by adverse possession against all persons who were *sui juris* at the time of her purchase. The testimony shows, moreover, that steps were early taken to cure the defects in the title. As we have seen, J. R. Raley would be estopped to assert against this defendant any claim he might have to the land, even if he attempted it. It appears that Herman Baum, shortly after he sold the land as mortgagee under the power in Charles Raley's mortgage, bought in the interest claimed by two parties, Mrs. Knight and Mrs. Jordan, in the land. Assuming that the conveyance by Herman Baum to Mannes Baum of the interest so bought was made after this suit was commenced—which is but one of the inferences which might be drawn from the evident change of date appearing on the face of the paper itself, from January 15th, 1897, to December 15th, 1896—then the claim of these two persons to this land, whatever it may be, is, for the purposes of this suit, to be considered as vested in Herman Baum. There is no suggestion that there is any other outstanding claim of title in any one. Now, Herman Baum, as mortgagee, undertook to pass the title of Charles Raley under the power of sale, and is thus the author of the defective title now complained

of. If, therefore, he should attempt to set up a valid out-standing title bought in by him against these parties, who, through his instrumentality, have taken a title which is defective because of his illegal acts, he would be taking advantage of his own wrong, which the Court would not allow. If, however, the Knight and Jordan interests were conveyed to Mannes Baum before this suit was commenced, then, for the purpose of the determination of this issue, as well as for all other purposes, such conveyance inures to the benefit of the defendant by way of estoppel against him to set up title in himself as against his former deed. *Reeder* ads. *Craig*, 4 McC., 411; *Harvin* v. *Hodge*, Dud., 25; *Kim-ball* v. *Blaisdell*, 22 Am. Dec., 476. It is unprofitable to speculate as to what would be the remedy or the rights of the defendant in case she were evicted by a title paramount. It is sufficient no such contingency has arisen, and, there being no grievance, no relief can be afforded. *Whitworth* v. *Stuckey*, 1 Rich. Eq., 409. And see the case of *Latimer* v. *Wharton*, 41 S. C., 508, in which the cases on this sub-ject are collected and reviewed.

The next defense is, that the contract sued on is usurious. The defendant contends that the price agreed on for the land was $400, to be paid in three equal instalments, on the first day of November, 1887, 1888, and 1889, respectively; that interest was calculated on the whole sum at the rate of ten per cent. per annum, from the date of the deed up to the maturity of the last instalment, November 1, 1889, as expressed in the notes; and this constitutes usury. The plaintiff claims that the price of the land was $475, to be paid in three annual instalments, the first one due November 1, 1887; that interest from the date of the deed, January 24, 1887, to November 1st, 1887, the maturity of the first instalment, at the rate of ten per cent., was added to the price, making the amount expressed in the deed, and to this was added the fee for recording the mortgage, and this sum thus obtained was divided into three equal parts, for which the three notes were given.

The master finds that the contention of the plaintiff is supported by the greater weight of the evidence, and I concur with him. The other is a most improbable arrangement, so fraught with usury upon extortion, that the clear preponderance of the evidence would be required to establish it. Interest at ten per cent. was allowed by law when this contract was made. Interest on the annual accruals of interest is not forbidden by our statute, and the right to receive it has been so long recognized, when the parties make it a part of the agreement, that it is hardly necessary to cite authority to sustain the proposition. The older ones are collected in the appendix to Johnston's Equity Digest, and their results classified, while the later decisions are in accord with them, and present many interesting applications of the doctrine to various conditions of fact. See the case of *Sharpe* v. *Lee*, 14 S. C., 243; *Mobley* v. *Davega*, 16 S. C., 75; *Maner* v. *Wilson*, 16 S. C., 466; *Watkins* v. *Lang*, 17 S. C., 18; *Miller* v. *Hall*, 18 S. C., 145; *Miller* v. *Edwards*, 18 S. C., 600; *Westfield* v. *Westfield*, 19 S. C., 89. All the incidents of such interest upon interest, the rate, the period during which the annual rests are to continue to be made, etc., are matters for agreement between the parties, subject, of course, to statuary regulations. The notes in the present case provide for interest "at ten per cent. per annum, payable annually, until the whole be paid. Interest to bear interest at the same rate." This case means nothing else but that the principal shall bear interest at ten per cent.; that the interest shall bear interest at ten per cent.; and that the annual rests shall be made after as well as before maturity, "until the whole be paid." Such is the agreement of the parties; it is not illegal, and must stand. The point is urged that the interest was calculated on the whole of the purchase money, from January 24 up to November 1, 1887, and added to the principal, making a new principal for which the notes were given, and that this compounding of the interest renders the contract usurious. That arrangement was matter for legitimate agreement be-

tween the parties. There is no evidence that the purpose
was to evade the law against usury. It is more likely that
it was done for the convenience of both parties, so that the
interest day might coincide with the day of the maturity
of the several instalments of the purchase money. The
first of November had been fixed, doubtless, by the defend-
ant herself as the time for paying those instalments. It is
the season selected by the great majority of people for meet-
ing their money obligations, from considerations of conveni-
ence, which the courts themselves recognize in fixing the
fall as the time for nearly all judicial sales of agricultural
lands. The case is the same as if a man should give his
note due at nine months, with interest from date, and if
not paid at maturity, then thereafter the interest to be paid
annually. In such a case, the interest would be calculated
up to the maturity of the note and added to the principal;
and if the debt were not then paid, the new principal thus
obtained would bear interest according to the terms of the
contract, and could not be impeached for usury. This de-
fense must be overruled. The counter-claim for the penalty
for usurious interest is thus, also, disposed of.

The next defense is that the plaintiff is not the owner of
the notes and mortgage. This defense is not sustained by
the evidence. The execution and delivery of the
notes and mortgage to plaintiff are alleged in the
complaint and admitted in the answer. At the trial,
he produces them and offers them in evidence. The notes
are payable to the order of M. Baum, and have never been
indorsed; and the mortgage is executed to him. Surely
these things are at least *prima facie* evidence of his title,
which will require some evidence in rebuttal before it can
be disregarded. At one of the references, defendant's attor-
ney asked the witness, Herman Baum, the question, "Who
is the owner of the notes and mortgage at this time?" He
replied, "I decline to answer, because I do not know what
you are driving at." Plaintiff's attorney objected, on the
ground of irrelevancy, because ownership is not denied in

the answer, and the master sustained the objection. This ruling of the master is made the ground of one of defendant's exceptions. At a subsequent reference, the defendant was allowed, upon motion before the master, to amend her answer so as to deny the plaintiff's ownership. This motion to amend, in effect, admits that the master's ruling was correct. No evidence on this point was offered after said amendment was made. As we have seen, the plaintiff had shown a *prima facie* case; nothing appears to rebut it, and the issue must be decided in his favor.

The last defense, that defendant ought to recover all payments made by her, has already been disposed of in the conclusion arrived at upon the defenses hereinbefore considered.

It is, therefore, ordered, adjudged, and decreed, that the master's report, except as herein modified, be, and the same is hereby, confirmed.

From this decree the defendant appealed.

*Messrs. B. B. Clarke* and *Wm. D. Trantham*, for appellant, cite: *General denial denies ownership:* 7 S. C., 176. *Failure of title is failure of consideration:* 66 Am. Dec., 661; 83 *Ib.*, 269; 89 *Ib.*, 316; 2 N. & McC., 586; 8 Cranch, 244. *Notes are usurious:* 50 S. C., 180; 39 S. C., 175; 37 S. C., 579.

*Mr. J. T. Hay*, contra, cites: *Courts do not make contracts for sui juris parties:* 50 S. C., 397. *Failure of consideration cannot be pleaded while purchaser is in possession:* 1 Rich. Eq., 407; 22 S. C., 185; 35 S. C., 88. *Note not usurious:* 2 N. & McC., 38.

July 26, 1898. The opinion of the Court was delivered by

MR. JUSTICE GARY. The facts of this case are set forth in the decree of his Honor, Judge Klugh, which (omitting the formal parts) will be incorporated in the report of the case.

The defendant appealed upon exceptions raising several questions, which are thus stated by her attorneys in their argument, to wit: "To sum up: The defendant argues that the judgment below should be reversed and the complaint dismissed, on the grounds: 1. That the plaintiff failed to prove that he was the owner of the notes and mortgage on which the action is based. 2. That the notes and mortgage were without consideration. 3. That the defendant was overreached and deceived by the alleged agent of the plaintiff, and the contract was against conscience; or, failing to have the complaint dismissed, the defendant maintains that the judgment below should be reversed and the case remanded, with directions, on the following grounds: 1. Because the witness, H. Baum, should have been required to answer the question propounded to him on the cross-examination as to the ownership of the notes and mortgage. 2. Because the contract was usurious. 3. Because the defendant should have refunded to her the amount of money she has paid on the notes and mortgage, with interest from the date of the payments. 4. Because, if the Court below is sustained in other respects, a smaller sum than that of $449.88, with interest from June 1, 1897, is due on the notes and mortgage."

The decree of his Honor, Judge Klugh, so fully sustains his conclusions, both by reasoning and authorities, that this Court deems it unnecessary to add anything to what he has said in disposing of the questions which are brought in review by the exceptions, which are overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.