## 9842

### J. I. CASE THRESHING MACHINERY CO. v. DYCHES.

#### (94 S. E. 1051.)

1. SALES—FRAUD—DUTY TO READ CONTRACT.—It was the duty of the purchaser of a tractor to read the contract and the receipt given for the tractor, before signing either, where he was fully able to do so.

2. SALES—REPRESENTATIONS—WAIVER BY SIGNING LEGAL CONTRACT.— Where the purchaser read the receipt given for a tractor before signing it, he cannot contend that he did not read the contract, that the statements therein were not true, or that any representations were made by plaintiff's agent; the receipt acknowledging receipt of a correct copy of the contract, that it was examined and read before it was executed, and that engine was delivered pursuant to such contract.

3. SALES—REPRESENTATIONS—KNOWLEDGE OF FALSITY.—Where there was no testimony tending to show that plaintiff's agent who sold the tractor had seen it, or had any knowledge that it was not as

capable of doing the same work as one borrowed by defendant, the purchaser cannot successfully contend that the agent made representations to that effect, knowing them to be untrue.

4. SALES—BREACH OF WARRANTY—WAIVER.—Where defendant purchaser failed to serve notice within ten days, as required by contract, that the tractor was defective, testimony tending to prove damages from breach of contract could not be considered.

Before GARY, J., Aiken, Spring term, 1917.     Affirmed.

Action by the J. I. Case Threshing Machine Company against H. P. Dyches. Directed verdict for plaintiff, and defendant appeals.

The following statement of defenses and counterclaim is from the record:

The first defense alleged that on August 19, 1915, plaintiff represented to defendant that it was the manufacturer of high grade and valuable quality of machinery, and offered to sell defendant "one Case 12-25 horse power tractor gas engine," and a contract—partly parol and written—was made for the purchase of the engine. That at the time defendant was engaged in the building of what is known as the National Highway through Aiken county and doing other construction work and operating a large farm, which required the use of a great amount of machinery, live stock, and the employment of a very large force of laborers necessary in grading, excavating, hauling and ploughing, of which plaintiff had full knowledge, and the contract was made and the engine sold for the purposes of facilitating and promoting defendant's said business. That at the time plaintiff represented and warranted said engine to be in good and sound condition and quality, and suitable for the aforesaid purposes, and sold it to do that work, and represented it to greatly reduce the number of laborers, machinery, and live stock then used in said business and to greatly reduce the costs and expenses incurred by reason thereof. And plaintiff also made special representations and warranties to the effect: (1) That the machine was made of good material and

better work than any other machine made of equal size and proportions working under the same conditions on same job; (2) that the machine was no trouble to operate, and that any person of ordinary intelligence could operate the same; (3) that this machine could be successfully and economically used in the building of the said National Highway as well as any other construction work of a like nature; (4) that this machine could be used successfully and economically upon the farm in the ploughing up of the soil, and otherwise; (5) that by reason of the easy manipulation of the machine and the small amount of costs attached and the durability of all its parts, that said machine would pay for itself in a short time; (6) that it was particularly suited for defendant's work; (7) that it would develop 25 horse power on 20 gallons of gasoline for 10 hours; (8) that it would haul at one time with ease 18 yards of earth, or three large trucks loaded with earth.  And that the defendant, confiding in the truth of said representations, both general and special, and relying on the same and induced thereby, agreed to sign the contract and purchase the engine at the price of $1,350, which was adequate for an engine for which this was represented and warranted to do.  It was alleged that these representations and warranties were false and untrue, and so known to plaintiff at the time, and were made to mislead, overreach, and defraud defendant, and that the engine was defective, imperfect, inferior, unsuited for the purpose it was sold and entirely worthless.  And defendant relying on and induced by said representations and warranties, in good faith, received and undertook to use the engine in his business for said purposes and to make it perform the work represented and warranted and sold to do until about November 1, 1915, when he abandoned his efforts after he had sustained great loss and damage, tendered the engine to plaintiff, who refused to receive it, and defendant never used it thereafter.

The second defense alleged the sale by plaintiff to defendant of "One Case 12-25 horse power tractor gas engine" on August 26, 1915, for the sum of $1,350, and said notes were given for the purchase price thereof and secured by a mortgage on the engine. In all other respects the second defense contained all of the allegations already stated as pleaded in the first defense. And in addition it was alleged that plaintiff received the engine and sold the same; and by reason of the matters and things alleged, defendant was entitled to a rescission of the contract and the notes and mortgage returned to him.

The counterclaim alleged the identical facts stated in the first and second defenses, and that by reason thereof defendant was caused to pay out $150 for freight on the engine from the point of shipment to Aiken and the sum of $50 for extra labor and material upon the said engine, and asked for judgment against the plaintiff for $200 damages; and the defendant on the whole case prayed for a rescission of the contract, and the notes and mortgage canceled for fraud, and that he be allowed judgment on his counterclaim for $200 damages.

*Messrs. Wm. M. Smoak, Croft & Croft* and *John F. Williams,* for appellant, cite: *As to direction of verdict:* 100 S. C. 203. *As to exclusion of testimony:* 75 S. C. 334; 97 S. C. 333; 98 S. C. 129; S. C. Adv. Sheets 107, 367; S. C. Adv. Sheets 108, 228; 80 S. C. 207; 92 S. C. 389.

*Mr. J. B. Salley,* for respondent, cites: *As to direction of verdict:* 99 S. C. 421; 104 S. C. 30; 106 S. C. 128-9; 107 S. C. 368; 59 S. C. 583; 85 S. C. 493-4; 102 S. C. 137-8; 99 S. C. 395; 105 S. C. 523; 30 S. E. 857; 77 S. C. 191-2; 25 Cyc. 430; 55 S. E. 1035-6; 30 S. E. 857; 43 N. E. 39-40; 70 N. E. 428-9; 72 Southern 139; 101 S. C. 469; 105 S. C. 523-4; 106 S. C. 137-8; 61 S. C. 192; 14 Ency. of Law 86-88; 99 S. C. 396; 78 S. C. 486. *As to conclusion of testimony:* 67 S. C. 362-3; 53 S. C. 451; 27 S. C. 67.

January 7, 1918.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action on three notes for the purchase money of a tractor engine, sold by the plaintiff to the defendant. The defendant executed a mortgage on the engine to secure the payment of said notes. The engine was sold under the mortgage, and from the proceeds the defendant received a credit of $495. The answer admitted the plaintiff's case, and alleged certain defenses and a counterclaim. (The record contains a statement as to these defenses and counterclaim, which will be reported.)

At the conclusion of the defendant's testimony, the plaintiff's attorneys made a motion for the direction of a verdict on the ground that there was no testimony tending to sustain the allegations of the answer as to fraud; also on the further ground thus stated:

"As to the question of failure of consideration, under the terms of the contract, if the question of fraud is out of the case, the contract sets forth certain warranties, and excludes all other warranties. The contract further states that those warranties are made under certain conditions, to wit, that after ten days' trial if there is any defect in the engine he must give written notice to plaintiff at Racine, Wis., and also to the local dealer, Mr. Wyman, at Aiken. The contract between the parties further provided that a failure to make the test or give the written notice, or to comply with the other conditions in the contract, shall be conclusive that the machine fulfilled the warranties, and the defendant is barred from claiming a breach of warranty or failure of consideration."

The jury under the direction of the Court rendered a verdict in favor of the plaintiff for $1,112.61, and the defendant appealed.

The first question that will be considered is whether there was any testimony tending to show fraud on the part of the

plaintiff. The contract for the purchase of the engine bears date the 19th of August, 1915, and contains the following provisions:

"Said machinery is purchased upon and subject to the following mutual and interdependent conditions, and none other, namely: It is warranted to be made of good material, and durable with good care, and to be capable of doing more and better work, than any other machine made of equal size and proportions, working under the same conditions of the same job, if properly operated by competent persons, with suitable power, and the printed rules and directions of the manufacturers intelligently followed. The condition of the foregoing warranty is that if after a trial of ten days by the purchasers, operating in the manner specified, the machinery shall fail to fulfill the warranty, written notice thereof shall at once be given to the J. I. Case Company at Racine, Wis., and also to the dealer from whom received, stating in what parts and wherein it fails to fulfill the warranty. * * * Failure to give such notices in any respect shall be conclusive evidence of such fulfillment of warranty on the part of the said company, and that the machinery is satisfactory to the purchasers, and the company shall be released from all liability under the warranty."

The defendant admitted that he signed the receipt dated the 26th of August, 1915, acknowledging the delivery of the engine, which receipt, among other things, contained the following recitals:

"Received of the J. I. Case Threshing Machine Company one Case 12-25 horse power tractor engine gas, shop No. 3532, upon and subject to the terms and conditions of a printed and written order therefor signed by H. P. Dyches, bearing date the 19th day of August, 1915. A full, true and correct copy of which order has been received by affiant. That said order contains all the terms, conditions, promises, representations, warranties, guarantees and agreements on the part of said J. I. Case Threshing Machine Company,

Incorporated, affecting the purchase of said machinery, and that no representations were made by any agents of said J. I. Case Threshing Machine Company, Incorporated, during the negotiations of sale or by any person conducting the negotiations on behalf of said company that were not set forth in said printed and written order before the same was signed by this affiant. That the settlement given by the affiant to said company for said machinery and the security therefor were examined and read before they were executed, and that the same are delivered pursuant to said order."

It was the duty of the defendant to read the contract and the receipt before signing either of them, especially as he was fully able to do so. *Montgomery v. Scott,* 9 S. C. 43, 30 Am. Rep. 1; *Baldwin v. Cable Co.,* 78 S. C. 419, 59 S. E. 67.

The so-called receipt was not only an acknowledgment that the engine had been delivered, but it was also a part of the contract, under which the plaintiff purchased the engine. The plaintiff did not contend that he did not read the receipt. If the statements therein contained are true, then he waived the right to insist that he did not read the contract, or that any representations were made by the defendant's agent. If the defendant had refused to sign the receipt with the statements therein set forth, but had been given notice that he had not read the contract, and that he was relying upon previous representations made by the agent, it is but reasonable to suppose that the plaintiff would have refused to deliver the engine. He cannot, therefore, take advantage of his own wrong.

The engine in question was supposed to be of the same horse power and in all respects similar to another engine manufactured by the plaintiffs, which the defendant had borrowed for the purpose of ascertaining whether such an engine would suit the work in which he was then engaged The plaintiff's agent who negotiated the sale in question was present when the experiments were being made with the bor-

28—108.

rowed engine. The defendant testified that when the borrowed engine was hitched to a four-horse plow it worked all right on the surface road, but when hitched to a six-horse plow it did not work satisfactorily; that the machine which he bought would not do more than 50 per cent. as well as the borrowed machine, working under like circumstances on the same class of work. The testimony does not show that the engines differed in any other material respect. The defendant, therefore, had full knowledge of the fact that even the borrowed engine which induced him to enter into the contract to purchase the engine in question did not have the power to do the intended work.

There is no testimony tending to show that the agent who sold the engine had ever seen it, or that he had any knowledge of the fact that it was not as capable of doing the work as the borrowed engine. It cannot, therefore, be successfully contended that he made any representations, knowing them to be untrue, for the purpose of deceiving the defendant. It is true there was testimony tending to show a breach of the contract, but that does not sustain the allegation of fraud. The exceptions raising this question are overruled.

While, as we have said, there is testimony tending to prove damages arising from a breach of the contract, it cannot be considered, for the reason that the plaintiff failed to serve notice that the engine was defective within ten days, as required by the contract.

Judgment affirmed.