16517

KAISER v. CAROLINA LIFE INS. CO.
(65 S. E. (2d) 865)

Messrs. *N. A. Turner, Edward A. Harter, Jr.,* and *H. Fletcher Padget, Jr.,* of Columbia, *for Appellant,*

*Messrs. C. T. Graydon* and *J. Bratton Davis,* of Columbia, *for Respondent,*

June 26, 1951.

STUKES, Justice.

This equitable action for the reformation of a life insurance policy and recovery of double indemnity for accidental death was tried by the court without jury or reference and resulted in judgment for plaintiff, whence defendant's appeal. The beneficiary was the mother of the insured. The latter procured the insurance in 1946 through his father who was then an agent of the insurer, afterward severing that connection to accept part-time employment with another life insurance company; he also farms. An Air Force veteran pilot, the insured re-entered the service as a First Lieutenant early in 1948. Engaged as such he was accidentally killed in a plane crash in Mississippi on December 5, 1948. The policy was then lost or mislaid but appellant promptly accepted and

paid claim for the face amount of it, which was $2,000.00, and denied liability for the same additional sum under the double indemnity provision. Payment to the beneficiary was under agreement that claim to the further benefit of double indemnity was unprejudiced thereby, and this suit was instituted in order to determine it. Meanwhile, the misplaced policy was found and was placed in evidence upon trial.

The portion of the policy entitled "Privileges and Conditions" contains the following:

"Aviation Clause. The liability of the Company is limited in any event, or under any circumstances, to a payment not to exceed the legal reserve on this policy, or ten per cent of the face amount hereof, whichever is the greater, should the insured die while engaging in aeronautical operations except as a fare paying passenger on schedule passenger service between established airports within continental United States."

For an additional annual premium of Three Dollars the policy also provided for double indemnity coverage and contained, among others, the following clause:

"Risks Not Assumed. This additional benefit shall not be payable provided such death resulted directly or indirectly from: (b) injuries contracted or sustained while participating in or in consequence of having participated in any submarine expedition or operations, or while in or on, or operating or handling any vehicle or mechanical device for aerial navigation, or in falling therefrom or therewith." There were eight other excepted risks.

After resuming military flying service the insured made application for change in his policy, appellant endorsed it as follows, and the insured paid the required additional premium: "In consideration of an annual premium of Five and No/100 dollars for each one thousand dollars of insurance, the limit of liability on the part of the Carolina Life Insurance Company as provided in the Aviation Clause under

the Privileges and Conditions is voided. The provisions of said Aviation Clause shall, however, be and continue in full force and effect if at any time the additional annual premium stated as a consideration for this endorsement is not paid."

Personal negotiations for the foregoing with the representatives of appellant were carried on in behalf of the insured by his father, the husband of respondent, and her case depends upon his testimony and the exhibits.

Appellant's contention is that the intention of the contracting parties was that the policy endorsement should affect only the Aviation Clause, which has been quoted above, and had no effect upon the provision for double indemnity, which excludes accidental death when flying. In the brief the questions involved on appeal are stated as follows but all need not be answered as will be seen:

1. Was it the mutual intent of the parties to have a contract of insurance without aviation restrictions on the double indemnity benefit?

2. If question one be answered in the affirmative, did the policy with the endorsement fail to constitute the true contract because of:

(a) mistake on the part of the insured induced by inequitable conduct, deceit, concealment or imposition of fraud on the part of the defendant?

(b) without disqualifying negligence on the part of the insured?

Respondent's husband (insured's father) testified that in 1948 when the insured anticipated re-entering the Air Force as a pilot he, the witness, went to Mr. Gillespie, the Columbia District Manager of appellant, so advised him and inquired about the provisions of the policy. The following is from transcript of the testimony at this point:

"Q. Was anything said about the double indemnity clause? A. Yes, I told him this policy carried double in-

demnity and I wanted to know if that provision could be made to take care of aviation and he said it could, and I asked him could it be made to take care of double indemnity and he said yes.

"Q. Did he give you any paper for your son to sign? A. Yes, before I left he gave me a paper for my son to fill out in order to determine further information so they could arrive at the rate of increase to be paid on the policy in order to take care of it."

Afterward application from was signed by the insured and filed with the policy for endorsement. After the policy was endorsed it was returned to the insured and before or at the same time there was delivered by mail to him or his father and agent an inter-departmental communication of the Company which respondent introduced in evidence, over appellant's objection, as exhibit 3, and it is referred to in the record as the "pink slip". It informed the district manager that action had been taken on the policy by the company and, quoting: "Full aviation coverage granted." Relying upon it and its prior delivery, the witness said, the additional premium was paid. The witness examined the policy after endorsement, but quoting him, "overlooked" the lack of separate endorsement of the double indemnity clause.

After the death of insured the witness filed claim in behalf of his wife, the beneficiary, and talked with an agent of the Company, Mr. Swygert, who mentioned that the policy contained double indemnity. The witness later called at the office of the District Manager to obtain check and was disappointed that it was only for the face amount of the policy, which he declined to accept. After a few days he saw the District Manager and also Mr. Cheatham who was the Company's Auditor and Supervisor of Claims. The witness understood from the manager, before the issuance of the endorsement, that the latter would change the policy to include death by aviation in the double indemnity, but after death the manager said not. The interview with Mr. Cheatham was at

the suggestion of the manager's clerk who had attempted to deliver the check. Mr. Cheatham told the witness that the claim papers were in order and that settlement was delayed on account of the claim for double indemnity, which was reinsured in another company and effort would be made to collect and pay it. After several days the check for $2,000-.00 was accepted upon agreement that the claim for the additional double indemnity benefit was unaffected. Mr. Cheatham showed the witness a telegram from the reinsurer to the effect that double indemnity was not payable. Mr. Cheatham said that before receipt of the telegram he thought double indemnity was payable.

On cross examination the witness said that he began employment with appellant in December 1945 and after training with Mr. Swygert went on his own as a solicitor. Five or six months later he left appellant's employ and went with Kansas City Life Insurance Company and has since solicited business for it, writing ordinary and double indemnity policies. He is a college graduate and former school teacher. His son, the insured, attended college and university for three years. His wife, the beneficiary, is also a college graduate. The witness and insured understood the provisions of the Aviation Clause of the policy. The witness had all of the transactions with appellant in reference to the policy and endorsement.

On re-direct examination the witness said that Mr. Gillespie (appellant's District Manager) definitely represented to him that the policy endorsement, quoting, "covered both the face of the policy and double indemnity." Mr. Cheatham, appellant's Auditor, told the witness that he similarly understood the endorsement until he received the telegram (from the reinsurer).

The foregoing and the policy and "pink slip" constituted respondent's case on the facts. Appellant's evidence will now be similarly reviewed.

Its District Manager, Mr. Gillespie, testified in behalf of appellant and denied that he made any representation with respect to the policy endorsement affecting the double indemnity clause and, on the contrary, told the insured's father that the extra premium which was paid for the endorsement did not affect the double indemnity clause; and the appellant company does not under any conditions or for any premium eliminate any of the exceptions from liability for double indemnity. He has been in the life insurance business for thirty years and does not know of any company which follows a different practice in this respect. When death claim was first prepared it was for the sum of $2,000.00 and the father of the insured signed it. Exhibit No. 3, the "pink slip", was an inter-office communication from appellant's ordinary department to the district office, addressed to the manager of the latter and not intended to go to the policy-holder but in this case it was unintentionally mailed to the insured with the policy.

The Auditor and Claims Supervisor, referred to in the foregoing resume of respondent's evidence, also testified and categorically denied any admission of liability of the company for double indemnity. He also denied knowledge of any telegram (referred to in respondent's evidence) or that he said the claim for double indemnity would have to be presented to another company. He admitted that appellant sometimes reinsures its double indemnity liability and he would not deny that his company made claim against its reinsurer in this case, and did not recall saying so in this instance; neither would he deny showing respondent's husband the telegram referred to in his testimony and expressing surprise at the action of the reinsurer—he did not recall it. Finally this witness admitted that the accidental death claim was submitted to the reinsurer, as was the practice with all such claims, regardless of what appellant determined to be its liability.

Another witness for appellant was the Assistant Manager of its Ordinary Department. He testified that the "pink slip" was an inter-office memorandum for the information of the district office, addressed to the manager of it. The intent in this instance was to call the attention of the district office to the fact that the Aviation Clause under the "privileges and conditions" of the policy was voided. It was not intended to be sent to the insured or beneficiary. Appellant company has no provision or premium whereby it would grant elimination of any of the exceptions to the double indemnity clause; and the witness knows of no other company which would. On cross examination the witness admitted that, quoting. "there is doubt in the interpretation of it (pink slip.)"

The final witness for appellant was its actuary who testified that it was his duty to prepare policy contracts, calculate the premiums and reserves, and keep posted on the similar activities of competing companies. He said that the double indemnity liability of the policy in suit was reinsured with The North American Reinsurance Company. He agreed with the other defense witnesses as to the function and meaning of the "pink slip" which was not intended to be delivered to the insured or it would have been more complete. It was merely an inter-office communication and not a part of the policy contract. Appellant has no applicable premium for elimination of any of the excepted risks in the double indemnity provision; and the witness knows of no company anywhere which has, so that double indemnity insurance was not obtainable in this case. On cross examination the witness could not say whether claim was made by appellant to the reinsurer for the double indemnity benefit but he thought it would have been ridiculous to have made such a claim.

Motions for nonsuit and directed verdict were timely made by appellant and refused. Judgment for respondent followed.

Upon consideration of the evidence summarized above (and that of respondent is clearer and more convincing than is the testimony of appellant's witnesses who, to say the least, had unsatisfactory memories) we cannot say that the trial judge erred in his factual conclusions except that we do not follow ·or affirm him in his finding of fraud, which is unnecessary to the judgment. That he was better able to appraise the witnesses, and weigh their testimony, than this court which is confined to the printed record, is patent and important. We are constrained to hold that the evidence is clear and convincing that it was the understanding of the parties to the contract, by which therefore they are bound in equity, that death by aviation accident was removed from the exceptions to liability on the face of the policy and the double indemnity provision. Disagreement came after refusal of the reinsurer to pay. It, of course, was not a party to the negotiations which gave rise and form to the contract and appellant's witnesses were reluctant to admit the connection at all. However, they would not deny in their testimony on cross examination communication with the reinsurer upon claim for double indemnity—the telegram from it, etc., to which the father and agent of the insured testified convincingly. Under these circumstances the denial of liability for double indemnity appears clearly to have been afterthought on their part.

Absent is convincing evidence of fraud by appellant and its officers and agents in the making of the contract, and the mistake in the consummation of it. They just failed to endorse separately and additionally the double indemnity provision of the policy in violation of their agreement with the insured. That they understood contrary to their present contention is conclusively shown by the content of the "pink slip"—"Full Aviation Coverage Granted." True this was an inter-office communication and not intended for the policyholder, which however adds to the conviction of truth which it carries. Aviation coverage could not have been full under

the policy if it excluded the double indemnity provision which in its opening sentence recites that it is a part of the policy. It was a simple mistake and apparently undiscovered until the reinsurer refused payment.

Courts of equity have long exercised jurisdiction to reform contracts affected by mutual mistake such as that found here, and affirmative answer to appellant's first question, stated above from the brief, is an end of the matter because that requires affirmance without going further. Negligence of the insured or beneficiary in not sooner discovering the mistake is not conclusive against liability upon the policy, as agreed upon, which was negligently prepared in contrary form by the insurer, just as negligence in preparation of the policy, though doubtless more blameworthy, does not, under many decisions, bar the insurer from relief by way of reformation. In the leading case of *Columbia National Life Ins. Co. v. Black,* 10 Cir., 35 F. (2d) 571, 71 A. L. R. 128, the court succinctly said :"* * * Negligence is not in itself a defense, else there would be no ground for reformation for mistake, as mistakes nearly always presuppose negligence." A valuable collection of earlier authorities is contained in the opinion. The same court later decided *Hayes v. Travelers Ins. Co.,* 10 Cir., 93 F. (2d) 568, .125 A. L. R. 1053, in which reformation was denied the insurer for lack of mutuality in the mistake contained in the policy. There was no fraud, as none in the first cited case and as none in the case in hand. In the opinion in the last cited the evidence was fully reviewed, as we have undertaken to do here, and the comparison is interesting. We apply the identical principles and reach opposite result here because we are convinced by the evidence in our case that there was mutual mistake,—the contracting parties understood that the policy was being endorsed to affect all benefits. However, both cases result favorably to policyholder and beneficiary.

The two decisions above cited from the 10th C. C. A. were reviewed in the enlightening decree on circuit of the present Associate Justice Oxner of this court, then circuit judge, which was affirmed and published on appeal in *McCuen v. Sovereign Camp, W. O. W.,* 192 S. C. 38, 5 S. E. (2d) 449. He clearly defined the bedrock of the right to reformation to be a meeting of the minds of the contracting parties which results in an agreement antecedent to the formal contract, which latter fails through mutual mistake to conform to the agreement. In the case in hand the mistake resulted from the failure of appelllant to endorse the double indemnity provision as it did the body of the policy, and the failure of the insured to notice, or to properly evaluate, the discrepancy.

An early leading authority in this State upon the subject of reformation of instruments is *Kennerty v. Etiwan Phosphate Co.,* 21 S. C. 226. The grounds of relief were classified, the first of which was stated to be where there is mutual mistake as to the facts upon which the instrument is based or as to its terms and stipulations, and, the second, where the mistake is unilateral and was caused by the fraud or imposition of the other party. In this case we are not concerned with the third class, which will not be stated, or with the second, because here the mistake was mutual. The court said: "In the first two classes, where the mistake is made to appear by clear and competent testimony, equity will unhestitatingly afford the necessary relief, either by reforming the paper or cancelling it as the case may require."

It is inconsistent and inequitable for appellant to plead the negligence of respondent in failure to discover its (appellant's) mistake, under the facts of this case. "When one party, by mistake, prepares an instrument incorrectly, he may not urge in bar of reformation that the other party read it so carelessly as not to detect the error. *Los Angeles & R. R. Co. v. New Liverpool Salt Co.,* 1906, 150 Cal. 21, 87 P. 1029; *California Packing Corp. v. Lar-*

sen, 1921, 187 Cal. 610, 203 P. 102." 45 A. L. R. 705. In our leading authority of *Jumper v. Queen Mab Lumber Co.*, 115 S. C. 452, 106 S. E. 473, is found a discriminating discussion and application of the principle of the unimportance of negligence in such cases as that and this. There an intended contract for the sale of standing timber by mutual mistake referred to the title of the land on which it stood. There was conflict in the evidence but the facts were found, as we have here, to the effect that mutual mistake was satisfactorily proved, and relief was granted. After extended review of our and other previous decisions, the court said the following with respect to the plea of negligence:

"The cases relied upon by the appellant, upon this question of negligence, are, without exception, cases involving the mistake only of the party claiming reformation, cases of unilateral and not mutual mistake, as to which there does not appear to be any doubt of the application of the doctrine. *Kennerty v. Etiwan Co.*, 21 S. C. 226, 53 Am. Rep. 669; *Forrester v. Moon*, 100 S. C. 157, 84 S. E. 532; *Montogomery v. Scott*, 9 S. C. 20, 30 Am. Rep. 1; *Coates & Sons v. Early*, 46 S. C. 220, 24 S. E. 305; *Murrel v. Murrel*, 2 Strob Eq. 148, 49 Am. Dec. 664; *Gilchrist v. Martin*, Bailey Eq. 494; *Cape Fear Lumber Co. v. Matheson*, 69 S. C. 87, 48 S. E. 111; *Baum v. Raley*, 53 S. C. 32, 30 S. E. 713; *Case Threshing Machinery Co. v. Dyches*, 108 S. C. 411, 94 S. E. 1051; *Baldwin v. Postal Tel. Cable Co.*, 78 S. C. 419, 59 S. E. 67."

The chancellor is not shackled by the rigid rules of the common law relating to negligence and contributory negligence if they stand in the way of justice and equity under the facts presented. Hence as has often been said, each suit for reformation stands on its own peculiar facts. Similar plea was recently rejected by this court in *Aiken Petroleum Co. v. National Petroleum Underwriters, etc.*, 207 S. C. 236, 36 S. E. (2d) 380, 388, where the impotence of the alleged negligence of the policyholder in not reading his policy was characterized as not disqualifying negligence. The case was

one of fraud of, the insurer rather than mutual mistake as here, but it was an action for reformation and no reason appears for differently evaluating the failure of the insured to read his policy with care sufficient to discover its defection from the true agreement. A portion of the opinion follows:

"Error is assigned because of the following charge given by. the judge to the jury:

" 'The fact that an insured person accepts a policy of fire insurance without noticing a mistake does not preclude him from having the mistake corrected, even though he fails to read the policy over or carelessly reads it.'

"It is contended that the foregoing instruction embodied a charge on the facts. The language quoted is substantially a direct quotation from the opinion in the case of *Central Ice Cream & Candy Co. v. Home Ins. Co.*, 171 S. C. 162, 171 S. E. 797."

In the cited case of *Central Ice Cream & Candy Co. v. Home Insurance Co.* the well-prepared trial decree was affirmed and published as the opinion of this court. Reformation was granted with respect to a fire insurance policy. The following is a presently pertinent excerpt from the opinion: "As to whether or not the plaintiff should be denied the relief sought by reason of its not having read the policy, I think that the general rule in regard to this proposition is clearly stated in the case of *Del. Ins. Co. v. Hill* (Tex. Civ. App.) 127 S. W. 283, also cited with approval in the case of *Dickenson County Bank v. Royal Exc. Assur.*, 157 Va. 94, 160 S. E. 13, 76 A. L. R. [1209] 1216: 'Since, if assured accepts a policy without dissent, it is presumed he knows its contents, the burden is on him, in a proceeding to reform it for mistake,· to prove that he did· not know its contents when it was accepted, as by showing that when he received it he put it away without inspection, or that he relied on the insurer's knowledge and supposed he had drawn it correctly.' " [171 S. C. 162, 171 S. E. 798.]

This court in adopting the decree of the trial court tersely said, also applicable. here: "This is a cause in equity. The appellant raises no. question as to any legal proposition depended upon by the trial Judge in his decree. The only question raised is that the evidence did not support the conclusion reached. The burden is on the appellant to show that there was an error below in the findings of fact. Our examination of the record does not convince us that there was such error."

The courts make no distinction between the equitable right to reformation of life insurance policies and fire insurance policies, as suggested in argument by appellant, just as there is no such distinction between insurance policies generally and other contracts. Equity operates upon all when the requisite proof and conditions are present. 44 J. S., Insurance, § 278, page 1108. 45 Am. Jur. 596, Reformation of Instruments, sec. 24. 29 Idem 235, Insurance sec. 240 *et seq.* Sec. 247, page 240, of the latter volume contains the following: "Reformation has likewise been allowed, under the circumstances, to correct errors concerning the face amount or principal sum of policies, *the inclusion of double indemnity provisions.* * * *." (Emphasis added.) There cited is the annotation in 125 A. L. R. 1060. Indeed, our last case on the subject, *Montalbano v. Auto. Ins. Co.*, 218 S. C. 367, 62 S. E. (2d) 829, was for reformation of policy upon the life of a dog. Many decisions from other courts may be found by reference to the footnotes to 13 Appleman, Insurance Law and Practice, 362 *et seq.*, secs. 7607 *et seq.*, and 6 Couch, Cyclopedia of Insurance Law 4982 *et seq.*, secs. 1391 *et seq.*

In the following cases cited by appellant in which reformation was denied it was upon the ground of absence of convincing evidence of mutual mistake, which at once distinguishes them from the case at bar; *Gowdy v. Kelly,* 185 S. C. 415, 194 S. E. 156; *Moore v. Jeffords,* 195 S. C. 512,

12 S. E. (2d) 737; and *Brown v. Volunteer State Life Ins. Co.*, 212 S. C. 537, 48 S. E. (2d) 507.

Also of no help to appellant in this action for reformation are the decisions cited by it which were in suits at law upon tort for fraud or deceit and the plaintiff's negligence was held to be, in effect, "disqualifying." They are simply irrelevant because they were not proceedings in equity upon the remedy of reformation. There is no need to further prolong this opinion to review, or even to cite them.

The exceptions are overruled and the judgment affirmed.

FISHBURNE, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., not participating.