0118

James Ralph CANTRELL, Jr., Plaintiff-Respondent, v. ALLSTATE INSUR-ANCE COMPANY, State Farm Insurance Company, Troy Lee Coker and Donna Coker, Defendants, of whom Allstate Insurance Company is, Appellant, and of whom State Farm Insurance Company, Troy Lee Coker and Donna Coker, Defendants-Respondents. Appeal of ALLSTATE IN-SURANCE COMPANY.

(313 S. E. (2d) 646)

Court of Appeals

*W. Francis Marion, Jr.,* of *Haynesworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for appellant Allstate Ins. Co.*

*Eugene C. Covington, Jr.,* of *Foster, Covington & Patrick,* Greenville, *for plaintiff-respondent.*

*Larry D. Estridge,* of *Wyche, Burgess, Freeman & Parham,* Greenville, *for defendant-respondent State Farm Ins. Co.*

*William F. Robertson, III,* of *Robertson & Cassidy,* Greenville, *for defendants-respondents Troy Lee Coker and Donna Coker.*

March 5, 1984.

GARDNER, Judge:

Appellant Allstate Insurance Company appeals an order reforming a garage liability policy issued by Allstate to respondent Cantrell. We affirm.

About July 21, 1979, respondent Cantrell purchased a 1973 Cadillac automobile to replace his 1973 pick-up truck which had become totally inoperable. On the same day, while driving the 1973 Cadillac, Cantrell was involved in a wreck in which

respondent Troy Lee Coker was injured. Respondent Coker sued Cantrell; a verdict was entered against Cantrell.

This action was instituted to determine if appellant Allstate insured Cantrell at the time of the accident. The trial court reformed a garage liability policy to include the Cadillac being driven by Cantrell at the time of the accident and held that Allstate was liable on the policy for the verdict awarded the Cokers against Cantrell.

Cantrell carried his automobile liability insurance with Allstate; this policy covered his pick-up truck and the renewal date was July 13, 1979. We note, parenthetically, that the standard liability policy provides coverage for substitute automobiles if the company is notified within thirty days of the substitution.

Cantrell planned to expand his automatic transmission garage business by buying, repairing and selling used cars.

On or about July 9, 1979, before the renewal date of his personal liability insurance policy, Cantrell telephoned Mr. Calvin Sullivan, the employee and agent of Allstate whom Cantrell had dealt with for four or more years. The record shows that Cantrell asked for a garage dealer's policy covering his pick-up truck and three to five dealer's tags. At the time Cantrell did not have a dealer's license and Sullivan told him he would have to obtain one in order to get a garage dealer's policy or, otherwise, Cantrell would have to buy a garage liability policy without the dealer's tags. A day or so later Cantrell called and told Sullivan to "go ahead and get the policy." When Cantrell paid a premium of $440, he was issued a binder on July 20, 1979. It is agreed that the effective date of the binder was July 13, 1979. The binder did not specify coverage for the pick-up truck but did reflect that Cantrell's personal auto insurance was carried with Allstate and had not been terminated. Later, after the accident on July 21, 1979, Cantrell was informed by Allstate that his old automobile policy had been cancelled on July 14, 1979, for nonpayment of the renewal premium and the new policy provided coverage only while the automobile was being used in the garage business.

Allstate never delivered a policy to Cantrell but notified him that the garage liability policy was cancelled about thirty days after the wreck. When this case was called for trial on

January 29, 1981, Allstate introduced a policy purporting to be the policy it had issued to Cantrell pursuant to the binder of July 20, 1979. Although the policy introduced was supposedly cancelled thirty days after the wreck, it was countersigned by Mr. Sullivan on May 6, 1980, some eight months after the supposed cancellation. The premium on this policy is only $156.

The trial court held that the preponderance of the evidence established that it was a mutual mistake of Cantrell and Sullivan that the coverage for the pick-up truck was not included in the policy issued. The trial court further found that the pick-up truck was inoperable at the time of the wreck and that the Cadillac was a substitute automobile. The trial court reformed the policy because of mutual mistake to include coverage for the pick-up and for the Cadillac as a substitute automobile.

Allstate argues there was no mutuality of mistake. We reject this argument. The binder issued cost Cantrell $440. After the cancellation, Cantrell purchased from another insurance company full garage dealer's liability insurance for $571. This policy was purchased through an independent insurance agent. The new policy provided for garage liability, dealer's tags liability and general coverage for an owned automobile.

The premium Allstate collected from Cantrell constitutes to this court preponderating evidence that it was the intent and agreement of both parties that coverage be provided for the pick-up truck at all times. Cantrell so testified and the cost of the binder corroborates his testimony concerning the mutuality of the agreement. We find no error in the holding of the trial court that the policy be reformed because of mutual mistake.

Allstate further contends that the policy it issued provides coverage only while an insured automobile is being used in garage business. At the time of the accident Allstate had in hand $284 of Cantrell's money above the $116 subsequently charged for the policy it allegedly issued. The binder reflected the existence of an unterminated liability insurance policy issued Cantrell. Obviously, both parties intended general coverage for Cantrell's pick-up truck by the policy to be issued by Allstate. The trial judge properly ruled that the general

liability insurance for the pick-up truck was intended and it was a mutual mistake that it was not included in the policy issued or allegedly issued.

The alleged new policy is a garage liability policy providing coverage only while an automobile is used in garage business. This is contra to the obvious intention of both parties. If Allstate intended to issue the alleged new policy, then both parties intended that the new policy would contain an endorsement providing general coverage for the pick-up truck. We so hold.

Allstate further contends the new policy does not provide for substitute automobiles, as the Cadillac was. We reject this argument. Cantrell's previous policy provided such coverage. We hold it was the intent of both parties that this coverage be included in any new policy.

A written agreement may be reformed by a court of equity to reflect a prior verbal agreement in a case where the parties have inadvertently failed to set out in writing the full substance of their agreement. *Kaiser v. Carolina Life Insurance Company*, 219 S. C. 456, 65 S. E. (2d) 865 (1951); *Central Ice Cream and Candy Company v. Home Insurance Company*, 171 S. C. 162, 171 S. E. 797 (1933). We hold that the facts of this case fit this rule as a glove fits a hand. We affirm the order of the learned trial judge.

Affirmed.

SANDERS, C. J., and GOOLSBY, J., concur.