519 S.E.2d 107

Ernest GEORGE, Personal Representative of
the Estate of Kate George, Plaintiff,

v.

EMPIRE FIRE AND MARINE INSURANCE COMPANY, W.
Gene Whetsell, Personal Representative of the Estate of Angela Farmer, and John Shields Autos, Inc., Defendants,

of Whom John Shields Autos, Inc., is Third–Party Plaintiff,

v.

Ken Rickel and Williams and Stazzone Insurance
Agency, Third–Party Plaintiff.

Ernest George, Personal Representative of the Estate
of Marvelyn Ernette George, Plaintiff,

v.

Empire Fire and Marine Insurance Company, W. Gene Whetsell, Personal Representative of the Estate of Angela
Farmer, John Shields Autos, Inc., Defendants,

Of whom John Shields Autos, Inc., is Third–Party Plaintiff,

v.

Ken Rickel and Williams and Stazzone Insurance
Agency, Third–Party Defendants,

of Whom Empire Fire and Marine Insurance
Company is Appellant,

and Ernest George, Personal Representative of the Estates of
Kate George and Marvelyn Ernette George, and W. Gene Whetsell, Personal Representative of the Estate of Angela Farmer,
and John Shields Autos, Inc., are Respondents.

No. 2906.

Court of Appeals of South Carolina.

Reheard March 11, 1999.

Refiled June 10, 1999.

Rehearing Denied Sept. 11, 1999.

208

Thomas J. Wills and James E. Reeves, both of Barnwell, Whaley, Patterson & Helms, of Charleston, for appellant.

Gaines W. Smith, of Legare, Hare & Smith, of Charleston, for third-party plaintiff.

Perry M. Buckner of Walterboro, and Gedney M. Howe, III of Charleston, for respondent.

Lee R. Moody, of Walterboro, for defendant. Matthew Story, of Clawson & Staubes, of Charleston, for third-party defendants.

## ORDER WITHDRAWING AND SUBSTITUTING OPINION

PER CURIAM:

Pursuant to our grant of Appellant's Petition for Rehearing, it is ordered that the opinion heretofore filed, Opinion No. 2906 filed November 23, 1998, be withdrawn and the attached Opinion be substituted.

**IT IS SO ORDERED.**

CURETON, Judge:

Ernest George (George), as Personal Representative of the Estates of Marvelyn and Kate George, filed this declaratory judgment action requesting the trial court declare the subject

insurance policies provide coverage in the amount of $1,000,-000 or, in the alternative, be reformed to provide this coverage. Empire Fire and Marine Insurance Company appeals Judge Whetstone's grant of summary judgment in George's favor. Additionally, Empire appeals Judge Dennis's grant of summary judgment to John Shields and W. Gene Whetsell on their cross-claims against Empire for reformation. We reverse and remand.

## FACTS

John Shields, a used car dealer doing business as John Shields Autos, Inc., obtained the insurance policies at issue from Empire on or about December 21, 1993. On August 1, 1994, Angela Farmer collided with a car driven by Marvelyn George while driving one of Shields's automobiles.[1] As a result of this accident, Marvelyn George, her daughter, Kate, and Farmer were killed.

George made claim upon Empire under Shields's policies.[2] Empire denied the claims, contending Shields's policies provided Farmer's Estate with only $15,000 in coverage. George brought suits against Empire, W. Gene Whetsell (as Personal Representative of Farmer's Estate), and John Shields Autos, Inc. George sought a declaratory judgment that the policies provided Farmer's Estate with $1,000,000 coverage. Alternatively, he asked the court to reform the policies to provide $1,000,000 in coverage.

Shields answered, filed a cross-claim against Empire, and joined Ken Rickel (the procuring agent) and Williams and Stazzone Insurance Agency as third-party defendants. Shields charged these parties with negligence and requested the same relief as George.

Both Empire and George moved for summary judgment. Judge Charles W. Whetstone, Jr. granted George's motion. His order declared the policies provided coverage of $1,000,000 to Whetsell. Alternatively, he ruled the primary policy should be reformed to provide coverage of $1,000,000.

After Judge Whetstone's order was filed, Shields and Whetsell also moved for summary judgment. This summary judg-

---

1. Shields lent Farmer the car to drive while her car was being repaired.

2. Farmer's policy provided liability coverage at only minimum limits.

ment motion was heard by Judge R. Markley Dennis, Jr. Judge Dennis, deciding the reformation issue only, ruled in favor of Shields and Whetsell. He also denied Empire's subsequent motion to alter or amend the judgment.

## LAW/ANALYSIS

### I. Standing

Empire asserts the trial court erred in finding George has standing to request reformation of the primary policy because neither George nor the estates he represents were party to the insurance contract. Ordinarily, a party requesting reformation must have been a party to the written document or in privity with a party. 66 Am.Jur.2d *Reformation of Instruments* § 60 (1973). However, a third-party beneficiary to an insurance contract may bring such an action. *Id.;* 76 C.J.S. *Reformation of Instruments* § 49 (1994); *see Kaiser v. Carolina Life Ins. Co.*, 219 S.C. 456, 65 S.E.2d 865 (1951). Therefore, we agree with the trial court's holding that George has standing to seek reformation of the insurance policy as a third party beneficiary to the contract.

Empire also assigns error to Judge Dennis's order asserting that neither Farmer's Estate nor Shields Autos has standing to seek reformation of the policy because (a) Farmer was not a party to the contract and (b) Empire has "conceded" Shields Auto has $1,000,000 in coverage. Thus, Empire argues Shields Autos has no personal stake in the proceeding anymore. As to Farmer, we reiterate that a third-party beneficiary to an insurance contract may maintain an action for reformation of the contract. *Id.* As concerns the standing of Shields Autos, assuming without deciding, that Shields Autos has no standing, we see no prejudice resulting from Judge Dennis's ruling inasmuch as we hold herein that reformation was improvidently granted. *See Stephens v. Draffin,* 327 S.C. 1, 488 S.E.2d 307 (1997) (error without prejudice does not warrant reversal).

### II. Policy Interpretation

A. *Effect of Invalid Exclusion in 1993–94 Policy*

Judge Whetstone held the 1993–94 policy should be reformed to provide $1,000,000 coverage because the policy

contained an invalid exclusion. We disagree. Empire first insured Shields Auto in 1992. The first Empire policy provided $1,000,000 coverage, but attempted to limit coverage when a vehicle was driven by one of Shields's customers. According to the policy's exclusions, Shields's customers were covered only when (1) the customer was uninsured; or (2) the customer had insurance in an amount less than the statutory minimum. Customers such as Farmer (who had coverage equal to or greater than the statutory minimum) were excluded under the terms of the policy. It is conceded that these exclusions violate South Carolina law.[3]

When renewing Shields's policy in 1993, Empire contends it offered Shields the same coverage he had in the 1992 policy, but did so through two policies instead of one. The first, or primary policy, provided coverage equaling the statutory minimum of 15/30/5.[4] This policy contains the same invalid exclusion found in the 1992 policy. The second policy was an excess policy providing CSL coverage of $1,000,000 ($985,000 in addition to the primary policy limits) for named insureds only. The trial judge held both policies failed to meet the statutory requirements, and reformed them to provide $1,000,-000 coverage.

■ Under South Carolina law, an insurance policy issued on an automobile licensed or garaged in this state must include liability coverage equaling at least the statutory minimum. S.C.Code Ann. § 38–77–140 (1987). This requirement may be met by a single policy or combination of policies. S.C.Code Ann. § 56–9–20(5)(f) (Supp.1998). Although the law prescribes a minimum coverage amount, an insurer is free to provide coverage exceeding the statutory minimum. S.C.Code Ann. § 38–77–140. However, once a policy or combination of policies offers the statutorily mandated coverage, additional coverage amounts may be limited to named insureds. *See Universal Underwriters Ins. Co. v. Metropolitan Property and Life Ins. Co.*, 298 S.C. 404, 380 S.E.2d 858 (Ct.App.1989).

---

**3.** *See Potomac Ins. Co. v. Allstate Ins. Co.*, 254 S.C. 107, 173 S.E.2d 653 (1970).

**4.** Effective March 1, 1999, the statutory minimum has been increased to 15/30/10. *See* S.C.Code Ann. § 38–77–140 (Supp.1998).

■ An excess policy is designed as supplementary insurance and would not exist except for the underlying primary policy. *Todd v. Federated Mut. Ins. Co.,* 305 S.C. 395, 409 S.E.2d 361 (1991). The definition of a "motor vehicle liability policy" only applies to required coverage under the law, not excess coverages. *See* S.C.Code Ann. § 56-9-20(7)(d) (Supp. 1998).

■ Under this statutory scheme, the two policy structure Empire utilized in 1993 is valid. The primary policy clearly limits coverage for permissive users to the statutorily mandated 15/30/5. Only named insureds are covered by the excess policy. Because the law permits the exclusion of permissive users in an excess policy, the exclusion in question is invalid as to the primary policy only. Therefore, when the exclusion is removed from the 1993–94 primary policy, Respondents are entitled to coverage equaling 15/30/5, not $1,000,000. *See Universal Underwriters,* 298 S.C. 404, 380 S.E.2d 858.

B. *Coverage Under the "Garage Liability" Portion of the Policy*

■ Judge Whetstone also held the 1993 policy, on its face, provided $1,000,000 coverage for this accident because Empire's representative, James Schneider, "unequivocally testified that the definition of Garage Operations, which includes the operation, maintenance and use of covered autos, refers to Garage Operations—Other than Auto Only." In reaching this conclusion, the trial judge used Schneider's testimony concerning the broader category of "Garage Operations" as proof the policy provides $1,000,000 in coverage.

This interpretation misconstrues the policy by ignoring the division of garage operations into the two subcategories shown in the declarations and the policy itself. This analysis also ignores other portions of Schneider's testimony which clearly evidence liability coverage under the written policy at the statutory minimum.

The policy defines "Garage Operations" as:
the ownership, maintenance or use of locations for business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" include the ownership, maintenance or use of the "autos" indicated in SECTION I

of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

In the policy declarations, the coverage amount for liability arising from "Garage operations" is subdivided into two categories—(1) "Auto" Only and (2) Other than "Auto" Only. The limits for these two categories vary. For "Auto Only," the policy limits coverage to the statutory minimum of 15/30/5. For "Other than Auto Only," the policy provides $1,000,000 in coverage. The definition of "garage operations" is applicable to "Garage Operations—Other than Auto Only" *and* "Garage Operations—Auto Only." This interpretation is supported by Schneider's testimony:

> The policy provides, as far as the liability line on the dec page, two coverages. One is garage operations other than covered autos and one is garage operations involving the ownership, maintenance or use of covered autos. The term garage operations is used in both of those coverages and all page 13 does is define what the phrase garage operations means. Page 2 of the policy is where those two different aspects of the garage operations are described and how each of those two different aspects are insured. The declarations page then gives what the applicable coverage limits are for those two different aspects of the garage operations coverage.

The declarations chart outlines (1) coverages; (2) the covered autos for the various coverages; (3) the insurance limits applicable to each type of coverage; and (4) the premium for each type of coverage. On the chart, the numbers 23, 28, and 29 are listed as "Covered Autos" for the liability portion of the policy. Section 1 of the Garage Coverage Form provides the definitions to correspond with these numbers shown on the chart. In fact, the section begins by saying "Item two of the Declarations shows the 'autos' that are covered 'autos' for each of your coverages." When the chart is read along with the definitions in Section 1 of the Garage Coverage Form, it shows liability coverage for owned private passenger autos (23), hired autos (28), and non-owned autos used in the policyholder's garage business (29).

Applying the policy definitions and interpretations of the facts of this case in the light most favorable to Empire, as we are required to do in a motion for summary judgment, *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998), the policy does not provide $1,000,000 in coverage for this accident. This accident arose from Angela Farmer's use of a covered auto (a private passenger auto (23) owned by the policyholder, John Shields Autos, Inc.). The accident is properly classified as "Garage Operations," but must be further subclassified as "Auto Only" because liability under the policy arose solely because of the ownership, maintenance, or use of a "covered auto." Under the terms of the policy, coverage in this instance is limited to the statutory minimum of 15/30/5.

## C. Policy Ambiguity

Alternatively, Judge Whetstone held the policy was ambiguous and required a reading in favor of $1,000,000 coverage. An insurance policy is a contract between the insurer and the insured. Therefore, it is subject to general rules of contract construction. *Standard Fire Ins. Co. v. Marine Contracting and Towing Co.*, 301 S.C. 418, 392 S.E.2d 460 (1990). In determining the meaning of a contract's provisions, the court must consider the entire contract. *Flagstar Corp. v. Royal Surplus Lines*, 332 S.C. 182, 503 S.E.2d 497 (Ct.App.1998) (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 348 (1976)). Policy language must be given its plain, ordinary and popular meaning. *Gambrell v. Travelers Ins. Co.*, 280 S.C. 69, 310 S.E.2d 814 (1983). "Every term contained in a contract must be considered and given effect if possible." *Valley Pub. Serv. Auth. v. Beech Island Rural Community Water Dist.*, 319 S.C. 488, 494, 462 S.E.2d 296, 299 (Ct.App.1995).

Where the words of an insurance policy are capable of two reasonable interpretations, the interpretation that is most favorable to the insured will be adopted. *Quinn v. State Farm Mut. Auto. Ins. Co.*, 238 S.C. 301, 120 S.E.2d 15 (1961). The fact that different courts have construed the language of an insurance policy differently is some indication of ambiguity. *Greenville County v. Insurance Reserve Fund*, 313 S.C. 546, 443 S.E.2d 552 (1994). If there is no ambiguity, the insurance

policy's terms must be interpreted and enforced according to their plain, ordinary, and popular meaning. *South Carolina Ins. Co. v. White,* 301 S.C. 133, 390 S.E.2d 471 (Ct.App.1990); *Braswell v. Faircloth,* 300 S.C. 338, 387 S.E.2d 707 (Ct.App. 1989). An ambiguity may not be created in an insurance policy by singling out a sentence or a clause. *Id.* at 342, 387 S.E.2d at 709. A court may not torture the ordinary meaning of language to extend coverage expressly excluded by the terms of a policy. *McPherson v. Michigan Mut. Ins. Co.,* 306 S.C. 456, 412 S.E.2d 445 (Ct.App.1991), *aff'd as modified,* 310 S.C. 316, 426 S.E.2d 770 (1993).

■ According to Judge Whetstone, the 1993–94 policy is ambiguous because the terms "auto only" and "other than auto only" are not specifically defined in the policy. Although these precise terms are not defined in the policy, the policy defines "garage operations"—other than covered "autos" and "garage operations"—covered "autos." In his testimony, Schneider explained the correlation between the terms used on the declarations page and those used in the policy.

Q: Now on the declaration page is [sic] does not say covered auto. It says auto only and other than auto only. How do you get, from what it says on that page, auto only and other than auto only, to covered auto and other than covered auto? Where in the policy does that come from?

A: Well, the declarations page doesn't use every single word that's in the policy because otherwise the declarations page would be just as long as the policy with additional numbers and dates and names and so forth plugged in. The declarations page is an attempt to summarize ... They only attempt to, by buzz words, if you will, or by cryptic references rather than the full reference, to identify what the coverage limits are ... Under auto only on the declarations page, the reference there is to the ownership, maintenance or use of covered autos. And where it says other than auto only, that means those are the limits applicable only to the other than covered autos portion of the garage operations coverage.

When the policy is considered as a whole, Schneider's interpretation is the only reasonable one. The declarations page only extends liability coverage to certain covered autos. Those autos are listed by numerical references on the declarations page. The only reasonable interpretation of "Garage Operations—Auto Only" is "Garage Operations—Covered Autos," because the declarations page limits liability coverage to "Covered Autos." It would be illogical to read the policy so as to classify an accident involving the use of only a covered automobile as "Garage Operations Other than Auto Only." The policy's use of the term "Auto Only" clearly means "Covered Autos." To interpret the policy otherwise would attempt to extend coverage to non-covered autos which clearly was not intended by any of the parties. The policy is not ambiguous.

### III. Policy Reformation

A. *Reformation Based on Mutual Mistake*

Empire asserts both Judge Whetstone and Judge Dennis erred in reforming the 1993–94 policy on summary judgment because there is a genuine issue of material fact as to whether a mutual mistake exists. We agree.

Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Summer v. Carpenter*, 328 S.C. 36, 492 S.E.2d 55 (1997). Summary judgment should not be granted when inquiry into the facts is desirable to clarify the application of the law. *Hook v. Rothstein*, 275 S.C. 187, 268 S.E.2d 288 (1980). In ruling on motions for summary judgment, the court must construe all ambiguities, conclusions, and inferences arising from the evidence against the moving party. *City of Columbia v. American Civil Liberties Union*, 323 S.C. 384, 475 S.E.2d 747 (1996).

Before a court will reform an instrument, the complaining party must show, by clear and convincing evidence, "'a mutual mistake; that both parties intended a certain thing; and that by mistake in drafting of the paper did not get what both parties intended.'" *Hann v. Carolina Casualty Ins. Co.*, 252 S.C. 518, 527–28, 167 S.E.2d 420, 424 (1969) (quoting *Sullivan v. Moore*, 92 S.C. 305, 305, 75 S.E.

497, 497 (1912)). "[T]he bedrock of the right to reformation [is] a meeting of the minds of the contracting parties which results in an agreement antecedent to the formal contract, which later fails through mutual mistake to conform to the agreement." *Kaiser v. Carolina Life Ins. Co.*, 219 S.C. 456, 467, 65 S.E.2d 865, 869 (1951). The contract may be reformed on the ground of mutual mistake when the mistake consists of the omission or insertion of some material element affecting the subject matter or when the terms and stipulations of the contract are inconsistent with those of the parol agreement that preceded it. *Crosby v. Protective Life Ins. Co.*, 293 S.C. 203, 359 S.E.2d 298 (Ct.App.1987).

Shields purchased four garage policies from Nationwide Insurance, each providing $1,000,000 coverage, from December 1988 through December 1992. The record clearly shows these early Nationwide policies provided $1,000,000 coverage for permissive users such as Shields's customers.

Shields testified he discussed the coverage desired under the garage liability policy with Rickel, Empire's procuring agent, before purchasing the 1992 Empire policy. Shields also testified that he wanted to make sure that "[a]nybody that drove one of [his] cars" had $1,000,000 coverage. According to Shields, Rickel assured him and he believed the coverage he desired had been provided. The record before us does not show that Rickel was aware of the Nationwide policies and their contents.

In 1993, Rickel's insurance agency completed an Empire renewal application for liability insurance on Shields's behalf.[5] The application requested "CSL $1,000,000," i.e., combined single limit coverage in the amount of $1,000,000. There was no indication on the form that coverage to customers would be limited.

Rickel acknowledged Shields wanted the same liability limits for the 1993 policy that he had for the 1992 policy. When asked if the policy limits were the same for the two years, he responded:

---

5. Shields signed the application in blank. Rickel stated he called Shields and was told to renew the policy for the same coverage Shields had in the 1992–93 policy.

A. If we are talking about the instance of this claim, I would say it's the same thing because in any case a customer driving a car is still going to be afforded the state minimum limits of insurance under the standard ISO form or under the way the policy was written with the split limits.

Q. So as far as the issue in this case is concerned, i.e. the coverage afforded to this driver, you think it would have been the same 92–93 as 93–94?

A. Yes.

Along the same line, Schneider testified:

Q. So as far as the customer is concerned, in your view the same coverage would be provided whether this accident had happened under the one policy in 1992 or the two policies that we have for 93–94?

. . . . .

A. If you're asking did the bottom line coverage limits that were available to John Shields—did it change at all between the first year and the second year? No. For customers that don't have their own coverage who might get 15 and 30 and 5 coverage under the first year, they would have 15, 30 and 5 under the second year policy. All that was done was issued [sic] as two policies instead of one.

Additionally, Esther Levine, an employee of Empire, testified that while John Shields Autos was provided $1,000,000 coverage in both the 1992–93 and 1993–94 policies, the customer endorsement limited coverage to Shields's customers. Allowing Empire the benefit of all reasonable inferences that can be drawn from this testimony, there is at least an inference that Empire's agents believed the endorsements limited coverage to customers of Shields to no more than 15/30/5 when the 1992–93 and 1993–94 policies were written.

Under *Potomac, Universal Underwriters,* and *Pennsylvania National Mutual Casualty Insurance Co. v. Parker,* 282 S.C. 546, 320 S.E.2d 458 (Ct.App.1984), the endorsements were invalid to the extent they precluded coverage to Shields's customers. However, in such instances, a court would reform such policies for the mandatory minimum coverage of 15/30/5,

not the policy limits. *See Potomac*, 254 S.C. 107, 111, 173 S.E.2d 653, 655 (court held the permissive user, "by virtue of the statutory law, was fully covered ... *up to the statutory limits* ") (emphasis added). *See also Hamrick v. State Farm Mut. Auto. Ins. Co.*, 270 S.C. 176, 179, 241 S.E.2d 548, 549 (1978) ("A policy of insurance issued pursuant to statutory law must at a minimum give the protection therein described. It may give more protection but not less, and *a policy issued pursuant to the law which gives less protection will be interpreted by the court as supplying the protection which the legislature intended.*") (emphasis added); *Jordan v. Aetna Casualty & Sur. Co.*, 264 S.C. 294, 297, 214 S.E.2d 818, 820 (1975) (" 'It is settled law that statutory provisions relating to an insurance contract are part of the contract, and that a policy provision which contravenes an applicable statute is *to that extent* invalid.' ") (quoting *Boyd v. State Farm Mut. Auto. Ins. Co.*, 260 S.C. 316, 319, 195 S.E.2d 706, 707 (1973)) (emphasis added).

 The record is undisputed that Shields intended to purchase $1,000,000 in customer coverage from Empire in 1993. On the other hand, it is less than clear that Rickel, as Empire's agent, intended to issue $1,000,000 in customer coverage. Neither Rickel nor anyone from Empire testified that they believed Empire intended to provide Shields with $1,000,000 in customer coverage in 1992 or 1993 and through error the policies as written showed a different amount. Further inquiry into the facts is desirable to clarify whether Rickel or some other agent of Empire made a mistake in writing the policies so as to limit coverage to Shields's customers to no more than 15/30/5. Therefore, summary judgment was inappropriately granted by both trial judges.

 Empire argues that even if Shields was mistaken as to his coverage, there was no inequitable conduct, deceit, concealment, or imposition by Empire's agents sufficient to warrant reformation based upon a unilateral mistake. Reformation of an instrument may be obtained where there is mistake on the part of plaintiff and inequitable conduct, deceit, concealment and imposition of fraud on the part of defendant, so as to induce plaintiff's mistake. *Aiken Petroleum Co. v. National Petroleum Underwriters of Western Millers Mut.*

*Fire Ins. Co.*, 207 S.C. 236, 36 S.E.2d 380 (1945). However, we need not address this argument because reformation was neither sought nor granted on this basis. *See Edwards v. Union Central Life Ins. Co.*, 193 S.C. 255, 8 S.E.2d 488 (1940).

## B. *Failure to Read Policy as Precluding Reformation*

 Empire also complains Shields had a duty to read the policy, and his "mistake" in not reading the policy "is not a mutual mistake which allows reformation." For this proposition, Empire relies on the case of *Doub v. Weathersby–Breeland Insurance Agency*, 268 S.C. 319, 233 S.E.2d 111 (1977).

 Assuming Shields's failure to read the 1993–94 policy was a "mistake," it was not the mistake upon which the trial courts based reformation. An appellant may not complain of a matter not decided by the trial court. *Talley v. South Carolina Higher Educ. Tuition Grants Committee*, 289 S.C. 483, 347 S.E.2d 99 (1986) (issue must be raised and ruled on by trial judge to be preserved for appellate review).

## IV. *Subject–Matter Jurisdiction of Judge Dennis*

 Empire argues Judge Dennis erred in granting Shields Auto and Farmer summary judgment because he did not have subject-matter jurisdiction inasmuch as Judge Whetstone's order was then on appeal. Specifically, Empire argues that because Judge Whetstone's appealed order held George was entitled to reformation, the reformation "issue" was already on appeal and further consideration of that issue at the trial level was precluded. Of course, the parties obtaining relief in Judge Dennis's order differ from those obtaining relief in Judge Whetstone's order. Additionally, Empire took the position before Judge Whetstone that George did not have standing to prosecute an action in reformation because Farmer was not a party to the insurance contract. As to Shields Autos, Empire's position is that it "should not be able to seek reformation of the contract when it is conceded ... that Shields Autos has $1,000,000 in coverage" and thus it did not "face imminent prejudice of a personal nature." We are not told by Empire how this argument involves subject-matter jurisdiction. Summary judgment as to some but not all of the

parties to a lawsuit is appealable. *Briggs v. Richardson*, 273 S.C. 376, 256 S.E.2d 544 (1979). This is especially true when, as here, in addition to the parties being different, the grounds for granting summary judgment differ in the orders.

## CONCLUSION

On its face, the 1993–94 Empire policies provide coverage equaling the statutorily mandated 15/30/5. When the invalid customer exclusion is removed, the policy only provides 15/30/5 coverage for customers of Shields. Nevertheless, the evidence before us creates an issue of fact whether Empire, through its agent Rickel, intended that the insurance policies afford Shields's customers coverage in the amount of $1,000,-000. Because further inquiry into the facts is necessary to clarify whether there was a mutual mistake regarding the coverage intended by both parties to the 1993–94 policy, we reverse the grant of summary judgment and remand for further development of the facts on the reformation issue and for trial of the negligence claims.

**REVERSED AND REMANDED.**

CONNOR and STILWELL, JJ., concur.