545 S.E.2d 500

Ernest GEORGE, Personal Representative of the Estate of
Kate George and Marvelyn Ernette George, Petitioner,

v.

EMPIRE FIRE AND MARINE INSURANCE COMPANY, W.
Gene Whetsell, Personal Representative of the Estate of Angela Farmer, and John Shields Autos, Inc., Defendants,

of whom W. Gene Whetsell, Personal Representative
of the Estate of Angela Farmer, and John
Shields Autos, Inc. are Petitioners,

and Empire Fire and Marine Insurance
Company is Respondent,

v.

Ken Rickel and Williams and Stazzone Insurance
Agency, Third–Party Defendants.

No. 25278.

Supreme Court of South Carolina.

Heard Feb. 8, 2001.

Decided April 9, 2001.

Gedney M. Howe, III, and Alvin Hammer, both of Charleston, for petitioner Ernest George.

Gaines W. Smith, of Legare, Hare & Smith, of Charleston, for petitioner John Shields Autos, Inc.

Robert J. Wyndham, of Howe & Wyndham, of Charleston, for petitioner W. Gene Whetsell.

James E. Reeves, of Barnwell, Whaley, Patterson & Helms, and Thomas J. Wills, of Wills & Massalon, both of Charleston, for respondent Empire Fire & Marine Insurance Company.

Matthew Story, of Clawson & Staubes, of Charleston, for third-party defendants.

ON WRIT OF CERTIORARI TO
THE COURT OF APPEALS

WALLER, Justice:

We granted a writ of certiorari to review the Court of Appeals' opinion in *George v. Empire Fire and Marine Ins. Co.*, 336 S.C. 206, 519 S.E.2d 107 (Ct.App.1999). We reverse.

**FACTS**

Petitioner John Shields Autos, Inc. (Shields Auto), a used car dealership, loaned its customer, Angela Farmer, a car to use while hers was being repaired at the dealership. While driving the loaner vehicle on August 1, 1994, Angela had a head-on collision with another vehicle. Marvelyn George was driving the other car, in which her daughter, Kate, was a passenger. Angela, Marvelyn, and Kate were all killed as a result of the accident.

As personal representative for the estates of his wife and daughter, petitioner Ernest George brought this declaratory judgment action against Respondent Empire Fire and Marine

Insurance Company (Empire), Angela's estate,[1] and Shields Auto. George sought declaration that Shields Auto's insurance policy with Empire covered Angela in the amount of $1 million or, alternatively, that the policy be reformed to provide $1 million in coverage.[2]

George and Empire filed cross motions for summary judgment, and the trial court granted summary judgment in favor of George. The trial court found that the policy provided $1 million coverage for Angela. In the alternative, the trial court decided that if the liability policy was limited to $15,000, then reformation based on mutual mistake was granted to provide $1 million in coverage.[3]

Empire appealed, and initially, the Court of Appeals affirmed on the basis of reformation. After granting rehearing, the panel then reversed summary judgment. The Court of Appeals held as a matter of law that the policy covered Angela only up to the statutory limits. Regarding the reformation issue, the Court of Appeals decided that there was an issue of fact on whether the policy was intended to cover *customers* in the amount of $1 million and remanded for further factual development. Petitioners appealed to this Court, and certiorari was granted on the reformation issue only.

## ISSUE

Did the Court of Appeals err in finding that an issue of fact existed regarding the issue of reformation based on mutual mistake?

---

1.  Petitioner W. Gene Whetsell, as personal representative of Angela's estate, is the named party. Throughout this opinion, we simply refer to Angela.

2.  Shields Auto in turn brought a cross-claim against Empire, as well as a third-party complaint against Ken Rickel, the insurance agent who procured the policy, and the Williams and Stazzone Insurance Agency. In the event that Empire denied $1 million coverage, Shields Auto alleged that Empire, Rickel, and the agency were negligent. As relief, Shields Auto also sought declaration that the policy provided $1 million coverage for this accident, or alternatively, that the policy be reformed to provide $1 million in coverage.

3.  This was Judge Whetstone's decision. Subsequently, Judge Dennis granted summary judgment, on the basis of reformation, to Shields Auto and Angela against Empire.

## DISCUSSION

The Court of Appeals made two holdings pertinent to our analysis of the issue that is before us. First, the Court of Appeals held that, insofar as the insurance policies with Empire contained an invalid endorsement which excluded coverage for certain customers, "a court would reform such policies for the mandatory minimum coverage of 15/30/5, not the policy limits." *George*, 336 S.C. at 220–21, 519 S.E.2d at 114. Second, the Court of Appeals stated that there is an issue of fact on "whether Empire, through its agent Rickel, intended that the insurance policies afford Shields's customers coverage in the amount of $1,000,000." *Id.* at 223, 519 S.E.2d at 116. While we agree with the Court of Appeals as to the effect of invalidating the endorsement, we disagree that there is a genuine issue of material fact on whether the parties intended customer coverage.

### 1. Reformation Due to Invalid Endorsement

The Empire policies contain an endorsement which excludes liability coverage for customers such as Angela. Although the parties agree that the exclusion is invalid under South Carolina law, they disagree as to the effect of removing the illegal exclusion from the policy. We agree with Empire, and the Court of Appeals, that the legal effect of invalidating the exclusion does not provide $1 million coverage for Angela. A full understanding of this issue necessitates a review of both the Empire policies and Shields Auto's previous liability policies with Nationwide Mutual Insurance Company (Nationwide).

From 1988 to 1992, Nationwide covered Shields Auto. For the first three policies (1988–89, 1989–90, 1990–91), Shields Auto had liability insurance in the amount of $1 million. The 1991–92 policy had a liability limit of $500,000. Significantly, in *all* the Nationwide policies, liability was *not* limited in any way for Shields Auto's customers.[4]

---

4. Item Five of the policies, entitled "LIABILITY COVERAGE FOR YOUR CUSTOMERS," stated the following, in relevant part: "Liability coverage for your customers is limited unless indicated below by an 'X' [in the appropriate box]." The box was checked on all four Nationwide policies. Thus, the endorsement at issue in this case was not activated on the Nationwide policies.

Empire began insuring Shields Auto in December 1992. For 1992–93, Shields Auto had a garage liability policy in the amount of $1 million. In this policy, however, liability for customers was limited.[5] This limitation excluded customers as "insureds," with two exceptions. First, if the customer had no liability insurance of her own, then the policy would provide liability coverage up to the statutory minimum limits.[6] Second, if the customer had liability insurance for less than the statutory minimum limits, the policy would provide liability coverage for the difference between the customer's coverage and the statutory minimum limits. The effect of the endorsement was to completely exclude liability coverage under the Empire policy for customers who had their own personal liability insurance in an amount equal to or greater than the statutory limits.

Shields Auto renewed its insurance with Empire for 1993–94. For this year, however, Empire provided Shields Auto with two policies—a primary and an excess policy. The primary policy covered "Garage Operations—'Auto' Only" in the amount of $15,000/30,000/5,000, and "Garage Operations—Other than 'Auto' Only" in the amount of $1 million. The excess policy covered named insureds up to $1 million. As in the previous year, the 1993–94 policy contained an endorsement which limited liability coverage for certain customers and completely excluded coverage for other customers.[7]

The accident occurred on August 1, 1994, and Angela's personal auto liability policy provided coverage at the statutory limits. Because the endorsement did not provide coverage for Shields Auto customers if they had their own insurance coverage for at least the statutory limits, the Empire policy on its face excluded Angela from any coverage. However, since this endorsement excludes a class of permissive users, it

**5.** The Empire policy contained the same standard language as the Nationwide policies. *See* footnote 4, *supra.* In the Empire policy, however, the box in Item Five was *not* checked, thereby activating the endorsement which limited liability for customers.

**6.** The statutory minimum limits at the time the accident took place were $15,000/30,000/5,000. *See* S.C.Code Ann. § 38–77–140 (1989).

**7.** That is, the box in Item Five again was not checked. *See* footnotes 4 and 5, *supra.*

violates South Carolina law. *See Potomac Ins. Co. v. Allstate Ins. Co.*, 254 S.C. 107, 173 S.E.2d 653 (1970) ("insured" as defined by South Carolina statute includes permissive user; thus, endorsement which attempted to exclude customer who had accident while using loaned vehicle was held invalid). Indeed, throughout this lawsuit, Empire has conceded that the exclusion is invalid under the rule of *Potomac.*

■ Petitioners argue that when Shields Auto renewed its coverage with Empire for the 1993–94 term, all parties intended to provide Shields Auto with the same coverage as the 1992–93 policy. Petitioners further argue that although the 1992–93 policy contained the endorsement which excludes customers such as Angela, the legal effect of invalidating the endorsement is that Angela would be covered for the amount of the 1992–93 policy, i.e., $1 million.

Although we agree with petitioners that the evidence clearly shows the parties intended the same coverage in 1993–94 as in 1992–93, "legal reformation" of the policy only affords coverage for Angela in the amount of the statutory minimum limits. As the Court of Appeals correctly found, when endorsements such as these are invalidated, reformation of the policies is "for the mandatory minimum coverage of 15/30/5, not the policy limits." *George,* 336 S.C. at 220–21, 519 S.E.2d at 114; *see also Potomac,* 254 S.C. at 111, 173 S.E.2d at 655 ("Under the facts of this case, White, by virtue of the statutory law, was fully covered by Potomac's policy *up to the statutory limits,* despite the exclusionary endorsement inserted in Potomac's policy.") (emphasis added); *Pennsylvania Nat. Mut. Casualty Ins. Co. v. Parker,* 282 S.C. 546, 553–54, 320 S.E.2d 458, 462–63 (Ct.App.1984) (where the court found permissive user was insured despite exclusion in policy, the court held that user was "insured against loss from the liability imposed by law").

The reasoning of *Potomac* mandates this result. In *Potomac,* the Court found that an endorsement which excluded liability coverage for a customer, who was a permissive user driving a loaned vehicle, violated the provisions of the South Carolina Financial Responsibility Act. The *Potomac* Court noted that two sections of the statute are considered as though written into the liability policy. *Potomac,* 254 S.C. at 111, 173

S.E.2d at 655 (citing *Pacific Ins. Co. of New York v. Fireman's Fund Ins. Co.*, 247 S.C. 282, 147 S.E.2d 273 (1966)). The first defines a permissive user as an insured. *See* S.C.Code Ann. § 38-77-30(7) (Supp.2000).[8] The second requires minimum statutory liability limits in every automobile insurance policy. *See* S.C.Code Ann. § 38-77-140 (1989).[9]

▮ Following the rationale of *Potomac*, when a liability policy contains an exclusion which conflicts with § 38-77-30(7), then the policy must be reformed as a matter of law to comply with § 38-77-140. Accordingly, the Empire policy, without the illegal endorsement, provides Shields Auto with coverage for Angela up to the statutory minimum limits of 15/30/5.

Therefore, contrary to what the trial court decided, the legal reformation of the Empire policy does not provide $1 million coverage.

### 2. Reformation Due to Mutual Mistake on Customer Coverage

▮ The question remains, however, whether the invalid endorsement should ever have been activated on the Empire policy at all. In other words, did the parties intend to limit liability for customers to the statutory minimum limits? The Court of Appeals held that a genuine issue of material fact exists on this question and therefore summary judgment was premature. Specifically, the Court of Appeals stated that although it "is undisputed that Shields intended to purchase

---

**8.** This section defines "Insured" as "the named insured ... and any person who uses with the consent, expressed or implied, of the named insured the motor vehicle to which the policy applies...."

**9.** This section states, in pertinent part:

No automobile insurance policy may be issued or delivered in this State to the owner of a motor vehicle or may be issued or delivered by an insurer licensed in this State ..., *unless it contains a provision insuring the persons defined as insured* against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of these motor vehicles within the United States or Canada, subject to limits ... as follows: [15/30/5]. Nothing in this article prevents an insurer from issuing, selling, or delivering a policy providing liability coverage in excess of these requirements.

(Emphasis added).

$1,000,000 in customer coverage from Empire, .... it is less than clear that Rickel, as Empire's agent, intended to issue $1,000,000 in customer coverage." *George,* 336 S.C. at 221, 519 S.E.2d at 115. We disagree and find that, as a matter of law, the evidence establishes that there was a mutual mistake as to customer coverage. Thus, we affirm summary judgment and hold that the trial court properly reformed the policy to provide coverage for Angela in the amount of $1 million. *See* Rule 220(c), SCACR (appellate court may affirm any judgment upon any grounds appearing in the record on appeal); *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (same).

A contract may be reformed on the ground of mistake when the mistake is mutual and consists in the omission or insertion of some material element affecting the subject matter or the terms and stipulations of the contract, inconsistent with those of the parol agreement which necessarily preceded it. *E.g., Crosby v. Protective Life Ins. Co.,* 293 S.C. 203, 206, 359 S.E.2d 298, 300 (Ct.App.1987). A mistake is mutual where both parties intended a certain thing and by mistake in the drafting did not obtain what was intended. *Id.* Before equity will reform a contract, the existence of a mutual mistake must be shown by clear and convincing evidence. *Id.*

In addition to the above-discussed insurance policies themselves, we review the relevant deposition testimony to resolve whether there is a material issue of fact regarding mutual mistake. At John Shields's deposition, he testified about the initial procurement of insurance from Empire, through agent Rickel. Shields made clear that he intended customers such as Angela to be fully covered by the liability policy:

Q. ... Have you ever discussed with any agent or sales person who was selling you insurance for John Shields Autos, Inc., a garage liability policy, the coverage that would exist for a customer to whom you loaned a car?

A. Yes.

Q. Who was the first agent you discussed that subject with?

A. Rickel.

. . .

Q. How about the person who sold you the Nationwide policy?

A. Same thing.

. . .

Q. You discussed that subject with them?

A. That's the main subject when you're buying an insurance policy. You want to know, "Is everybody covered?"

Q. "Everybody" being who?

A. Anybody that drove one of my cars.

Shields also testified that after the accident, he was assured by Empire's agents that Angela would be covered for $1 million:

Q. Did anyone tell you that the young lady driving the car that caused the accident had a million dollars worth of insurance?

A. They told me that my car was covered with a million dollars worth of insurance, regardless of who drove it.

Q. Who said that to you?

A. Well, first of all, Esther Levine told me and then Tom Rickel called me from New York and said, "Don't worry about it John. I sold you the policy. You're covered. You don't have a thing to worry about." That's what he said. That's when I told him that I was worried about it.

Q. . . . Did [Rickel] ever say, "Don't worry. That young lady has a million dollars worth of insurance. You don't need to worry"?

A. Yes, because he said, "*Your car is covered, regardless of who is driving it.*"

Q. He said that?

A. Yes.

Q. Those words?

A. Those words—*when I bought the policy* and then when I got worried about the wreck. That was my main concern.

(Emphasis added). Additionally, Shields testified that he asked Rickel to get the same coverage as Shields Auto had "before," i.e., with Nationwide. As discussed above, the Nationwide policies did not limit liability in any way for Shields Auto's customers.

At Rickel's deposition, he testified that when he first wrote the Empire policy for Shields Auto, he knew that Nationwide had previously insured Shields Auto:

Q. And did you do any investigation into the Nationwide coverage?

A. *Yes, I would have.* When I was doing the application, I asked John [Shields] what type of coverage he had.

(Emphasis added). Rickel stated that Shields "went with the million dollar limit" on the Empire policy in 1992, which was up from the $500,000 liability limit of the previous year's policy with Nationwide.

Regarding the renewal of coverage with Empire for the 1993–94 year, Rickel testified that Shields wanted the same liability limits and sent Rickel a blank application which Rickel subsequently filled out.[10] Rickel acknowledged that "the policy forms changed," i.e., coverage went from a single policy to two separate policies. Rickel stated that moving from the single policy format to two policies would not have changed the insurance coverage for Angela.

■  Summary judgment is appropriate when it is clear that there is no genuine issue of material fact and the conclusions and inferences to be drawn from the facts are undisputed. *SSI Medical Servs., Inc. v. Cox,* 301 S.C. 493, 497, 392 S.E.2d 789, 792 (1990). In ruling on a motion for summary judgment, the evidence and the inferences which can be drawn therefrom should be viewed in the light most favorable to the nonmoving party. *Id.*

Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Baughman v. American Tel. & Tel. Co.,* 306 S.C. 101, 115, 410 S.E.2d 537, 545 (1991). Once the moving party carries its initial burden, the "opposing party must, under Rule 56(e), 'do more than simply show that there is some metaphysical doubt as to the material facts' but 'must come forward with specific facts showing that there is a *genuine issue for trial.*'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986)) (emphasis in

---

**10.** The renewal form listed liability limits as "CSL 1,000,000."

original). The party opposing summary judgment cannot simply rest on mere allegations or denials contained in the pleadings. Rule 56(e), SCRCP.

There is no issue of fact as to what Shields intended. Shields testified unequivocally that he intended customers such as Angela to be covered for $1 million. He stated this was the "main subject" he discussed with Rickel. Furthermore, Shields testified that Rickel told him, when he bought the policy *and* after the accident, that his "car is covered, regardless of who is driving it." As to Rickel's testimony, he stated that he wrote Shields up for $1 million coverage. Additionally, we find it clear that Rickel stated he "would have" investigated Shields Auto's previous coverage with Nationwide. Those Nationwide policies plainly covered customers for the full liability limits of the policies, not the statutorily mandated limits. Given this evidence, the only reasonable inference is that Rickel, or some other agent of Empire, erroneously limited liability for Shields Auto's customers.[11]

Empire had a burden to come forward with specific facts to create a genuine issue of material fact. *See* Rule 56(e), SCRCP. In our opinion, because Empire has failed to present specific facts showing a *genuine* issue for trial, Empire has not met its burden under Rule 56(e).[12] Put simply, Empire has not offered any material evidence to dispute the fact that a mutual mistake occurred since Shields requested from Rickel $1 million coverage for "anybody" who drove one of his cars, but nonetheless the policies limited customer coverage. *Cf. Commercial Union Assurance Co. v. Castile*, 283 S.C. 1, 320 S.E.2d 488 (Ct.App.1984) (where the court found that insured and agent agreed to provide insurance for 1977 Ford during

---

11. Empire points to Rickel's testimony that "a customer driving a car is still going to be afforded the state minimum limits of insurance under the standard ISO form or under the way the policy was written with the split limits." Empire contends this statement shows Rickel believed customers would not be covered for $1 million. We find that the only logical inference from Rickel's statement is that he was testifying as to what the policy on its face provided for customers. This comment in no way addresses the intent of Shields regarding customer coverage, or Rickel's understanding of that intent.

12. Although Empire also moved for summary judgment, for purposes of our Rule 56 analysis, we treat Empire as the opposing party because summary judgment on this issue was granted for petitioners.

their telephone conversation, even though agent could not recall the conversation, and thus reformed the policy erroneously written to cover 1972 Chevrolet); 13A John Appleman & Jean Appleman, Insurance Law and Practice § 7609 (1976) ("where the party applying for insurance states the facts to the agent and relies on him to write the policy, . . . and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual.").

We note further that all relevant parties have been deposed; thus, it was not premature for the trial court to dispose of the case on summary judgment. *Cf. Baughman,* 306 S.C. at 112, 410 S.E.2d at 543 (summary judgment should not be granted until "the opposing party has had a full and fair opportunity to complete discovery"). Clearly, Empire had a full and fair opportunity to develop the record on this issue, but failed to do so.

Accordingly, we find there is clear and convincing evidence of mutual mistake, requiring reformation of the policy. *Crosby v. Protective Life Ins. Co.,* 293 S.C. at 206, 359 S.E.2d at 300 (a mistake is mutual where the clear and convincing evidence shows that both parties intended a certain thing and by mistake in the drafting did not obtain what was intended). We therefore affirm, in result, the trial courts' decisions to grant summary judgment to petitioners and reform the policy to provide $1 million coverage for Shields Auto's customers. *See* Rule 220(c), SCACR (appellate court may affirm any judgment upon any grounds appearing in the record on appeal).

The Court of Appeals' decision is

**REVERSED.**

TOAL, C.J., BURNETT and PLEICONES, JJ., concur.

MOORE, J., concurs and dissents in a separate opinion.

MOORE, Justice, concurring and dissenting:

I concur in Part 1 of the majority opinion regarding reformation based on an invalid endorsement. I disagree, however, with the holding in Part 2 affirming the grant of summary

judgment on the issue of reformation based on mutual mistake. Accordingly, I dissent from that portion of the opinion.

In concluding there is no factual issue regarding a mutual mistake, the majority overlooks pertinent deposition testimony by Empire's agent, Ken Rickel, who wrote the original Empire policy. In context, Rickel testified as follows:

Q: Okay. Now, when you first wrote this policy or first filled out this application with Mr. Shields, that was the first time you had met him?

A: Yes, to the best of my recollection.

Q: Had Empire written insurance to him previously?

A: No.

Q: Do you know who had written his insurance previously?

A: Nationwide.

Q: And did you do any investigation into the Nationwide coverage?

A: Yes, I would have. When I was doing the application, I asked John what type of coverage he had.

Q: What did he tell you?

A: He told me he had half a million dollars of coverage and we went over the inventory coverage on *(sic)* the garage liability. We went over his inventory coverage. I didn't feel he was carrying enough but he told me—he specifically said that that's what he wanted. He wanted the $100,000, I believe, for inventory coverage. That he felt he was definitely safe with that limit. And then we went over his property coverage also.

Q: Okay. *Did you see his Nationwide policy?*

A: I know that I saw his Nationwide policy on the property. *I don't recall—I'm not sure if I saw the Nationwide policy on the liability.*

Q: Okay. And this would have been in the context of the discussions prior to the filling out of the application?

A: This would have taken place while I was filling out the application.

Based on this testimony, I believe the Court of Appeals correctly concluded the record "does not show that Rickel was

aware of the Nationwide policies and their contents." Absent evidence that Rickel knew the Nationwide policies covered customers for the full liability limits, there is no clear and convincing evidence of his intent in writing the initial Empire policy. *See Truck South, Inc. v. Patel,* 339 S.C. 40, 528 S.E.2d 424 (2000) (mistake must be common to both parties and, by reason of it, each has done what neither intended); *Sims v. Tyler,* 276 S.C. 640, 281 S.E.2d 229 (1981) (before equity will reform an instrument, it must be shown by clear and convincing evidence not simply that it was a mistake on the part of one of the parties but that it was a mutual mistake).

In my opinion, summary judgment was inappropriately granted. I would affirm the Court of Appeals' ruling remanding the case for trial on the issue of reformation based on mutual mistake.