**HAULERS INSURANCE COMPANY, INC., Plaintiff–Respondent,**

v.

**Rodger P. WYATT, Sr. and Jerry Wyatt, d/b/a Wyatt's Auto Sales, Rodger P. Wyatt, Jr., and Rhonda Meyer, Defendants,**

**and**

**Christopher Meyer, Defendant–Appellant.**

No. 25871.

Missouri Court of Appeals, Southern District, Division One.

Sept. 2, 2005.

Motion for Rehearing or Transfer Denied Sept. 26, 2005.

Application for Transfer Denied Nov. 1, 2005.

His conclusory assertions that reasons for suppression exist are utterly frivolous.

contests the entry of a summary judgment in favor of Haulers. We affirm.

Rodger P. Wyatt, Jr. ("Wyatt") was driving a vehicle owned by Wyatt's Auto Sales when it collided with a motorcycle operated by Appellant and on which his wife, Rhonda Meyer ("Ms. Meyer") was a passenger, causing injuries to both of them. Appellant filed a personal injury lawsuit against Wyatt, individually, and Jerry Wyatt and Rodger P. Wyatt, Sr., d/b/a Wyatt's Auto Sales ("Wyatt's Auto Sales").[1] Haulers had issued its policy to Wyatt's Auto Sales providing automobile liability insurance coverage on the vehicle driven by Wyatt. Neither party contends that the vehicle driven by Wyatt at the time of the accident was not covered by the policy. Rather, the issue is the amount of applicable coverage.

The Amended Garage Coverage Form Declarations page of Hauler's policy contained the following:

**ITEM TWO**

**SCHEDULE OF COVERAGES AND COVERED AUTOS**

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTO Section of the Garage Coverage Form next to the name of the coverage. Entry of a symbol next to LIABILITY provides coverage for "garage operations."

Leonard P. Cervantes, Jennifer Suttmoeller, Cervantes & Associates, St. Louis, for appellant.

Jeffrey P. Hine, Kimberly S. Price, Osburn, Hine, Kuntze, Yates & Murphy, LLC, Cape Giradeau, for respondent.

PHILLIP R. GARRISON, Presiding Judge.

Haulers Insurance Company ("Haulers") filed a declaratory judgment suit against Christopher Meyer ("Appellant") and others to determine the applicable liability limits under an "Amended Garage Coverage Form" insurance policy ("the policy") issued by it. On this appeal, Appellant

| COVERAGES | COVERED AUTOS (Entry of one or more of the symbols from the COVERED AUTOS Section of the Garage Coverage Form shows which autos are covered autos.) | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 22 27 | $ 500,000 PER ACCIDENT $1,500,000 Other than auto only AGGREGATE | 1,166.00 |

1. Ms. Meyer also filed a separate personal injury lawsuit against Wyatt and Wyatt's Auto Sales.

Under the Covered Autos section of the policy, the number "22" is the symbol for "Owned 'Autos' Only" and the number "27" is the symbol for "Specifically Described 'Autos.'"

In describing the liability coverage for "'Garage Operations'—Other than covered 'autos,'" the policy provided:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos."

... Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance—"Garage Operations"—Other than Covered "Autos" has been exhausted by payment of judgments or settlements.

The policy also described liability for "Garage Operations"—Covered "Autos" as:

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos."

. . . .

Our duty to defend or settle ends when the Liability Coverage Limit of Insurance—"Garage Operations"—Covered "Autos" has been exhausted by payment of judgments or settlements.

The policy also contains provisions concerning the limits of the insurance coverages. One section under "Limit of Insurance" is titled "Aggregate Limit of Insurance—'Garage Operations'—Other than Covered 'Autos'" and provides:

For "garage operations" other than the ownership, maintenance or use of covered "autos", the following applies:

Regardless of the number of "insureds", claims made or "suits" brought or persons or organizations making claims or bringing "suits", the most we will pay for the sum of all damages involving "garage operations" other than "auto" is the Aggregate Limit of Insurance—"Garage Operations"—Other Than Covered "Autos" for Liability Coverage shown in the Declarations.

Damages payable under the Aggregate Limit of Insurance—"Garage Operations"—Other Than Covered "Autos" consist of damages resulting from "garage operations", other than the ownership, maintenance or use of the "autos" indicated in Section I of this Coverage Form as covered "autos[.]"

. . . .

Damages payable under the Each "Accident" Limit of Insurance—"Garage Operations"—Other Than Covered "Autos" are not payable under the Each "Accident" Limit of Insurance—"Garage Operations"—Covered "Autos."

Subject to the above, the most we will pay for all damages resulting from all "bodily injury" and "property damage" resulting from any one "accident" is the Each "Accident" Limit of Insurance—"Garage Operations"—Other Than Covered "Autos" for Liability Coverage shown in the Declarations.

. . . .

The Aggregate Limit of Insurance—"Garage Operations" Other Than Covered "Autos" applies separately to each consecutive annual period and to any remaining period of less than 12 months[.] (emphasis added).

Another section under "Limit of Insurance" is titled " 'Garage Operations'—Covered 'Autos' " and provides:

For "accidents" resulting from "garage operations" involving the ownership, maintenance or use of covered "autos", the following applies:

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" involving a covered "auto" is the Each "Accident" Limit of Insurance—"Garage Operations"—Covered "Autos" for Liability Coverage shown in the declarations.

Damages and "covered pollution cost or expense" payable under the Each "Accident" Limit of Insurance—"Garage Operations"—Covered "Autos" are not payable under the Each "Accident" Limit of Insurance—"Garage Operations"—Other Than Covered "Autos." (emphasis added).

The policy defines "accident" as "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.' "

Haulers filed a declaratory judgment suit against Wyatt and Wyatt's Auto Sales as well as Appellant and Ms. Meyer, seeking a determination that its policy provided a single limit of $500,000 for the accident in question to satisfy both Appellant's and Ms. Meyer's claims arising from the accident. In his answer to that suit, Appellant contended that there was $1,500,000 coverage for the claims arising from the accident. Haulers and Appellant each filed motions for summary judgment.[2] The trial court granted Haulers motion for summary judgment, and in its judgment, held that, as a matter of law, the policy language was unambiguous and provided a maximum total of $500,000 coverage for the accident in question. With reference to the contentions of Appellant, the court held that the $1,500,000 aggregate limit of coverage did not apply to an automobile accident involving a "covered auto." This appeal followed.

■ Our review of a motion for summary judgment is de novo. ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper when there is no genuine issue of material facts, and the moving party is entitled to a judgment as a matter of law. First Nat. Bank of Annapolis, N.A. v. Jefferson Ins. Co. of New York, 891 S.W.2d 140, 142 (Mo.App. S.D.1995). "The propriety of summary judgment is purely an issue of law." ITT Commercial Fin. Corp., 854 S.W.2d at 376. "When considering appeals from summary judgments, the [appellate court] will review the record in the light most favorable to the party against whom judgment was entered." Id.

■ In the first of his two points on appeal, Appellant contends that the trial court erred as a matter of law in granting Hauler's motion for summary judgment thereby declaring that the applicable limits of its coverage was $500,000 rather than

**2.** Although Ms. Meyer contended in her answer to the suit against her that there was coverage in the amount of $1,500,000, she filed a motion for summary judgment claiming that there was $500,000 coverage for her claim and $500,000 for Appellant's claim.

$1,500,000. He argues that the policy should be construed in favor of the policyholder because it is ambiguous with respect to the amount of coverage in three ways. First, the Amended Garage Coverage Form Declarations page identifies two amounts of coverage under the Liability/Coverages section—a limit "per accident" of $500,000 and a limit "other than auto only aggregate" of $1,500,000. Second, Appellant claims the policy is ambiguous because the terms "other than auto only," "aggregate," or "other than auto only aggregate" are not defined in the policy and are thus ambiguous. Third, in describing the limits of insurance, the policy contains no reference to "other than auto only."

 Whether an insurance policy is ambiguous is a question of law. *Martin v. U.S. Fidelity and Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999). When we interpret the language of an insurance policy, "we give the language its plain meaning, which is the meaning that would ordinarily be understood by a layperson who bought the policy." *Tapley v. Shelter Ins. Co.*, 91 S.W.3d 755, 757 (Mo.App. S.D.2002). When there is "duplicity, indistinctness or uncertainty in the meaning of the words used in the insurance policy," there is an ambiguity. *Id.* Ambiguous provisions of an insurance policy are construed against the insurer. *Am. Standard Ins. Co. of Wisconsin v. May*, 972 S.W.2d 595, 602 (Mo.App. W.D.1998). However, this court will not distort unambiguous policy language to create an ambiguity. *Am. Motorists Ins. Co. v. Moore*, 970 S.W.2d 876, 878 (Mo.App. E.D.1998). An ambiguous phrase is not considered in isolation, but rather in the context of the entire policy. *Am. Standard Ins. Co. of Wisconsin*, 972 S.W.2d at 602.

Haulers argues that the policy is not ambiguous, and that Appellant's interpretation of the policy is not supported by the policy language. It asserts that terms are not rendered ambiguous simply because they are not defined in the definitions section of the policy. Haulers argues that the term "other than auto only," is clear in and of itself because the average person understands that an insurance policy covering garage operations would cover "matters related to automobiles and matters not related to automobiles," hence the inclusion of the phrase "other than auto only." Haulers also points out that the policy differentiates between accidents involving covered autos and accidents resulting from garage operations other than ownership, maintenance or use of a covered auto.

Although the policy provisions in question are not models of clarity, we do not find them to be ambiguous under the standards set forth above. The Amended Garage Form Declarations Page lists a "per accident" limit of $500,000 and an "other than auto only aggregate" limit of $1,500,000. The parties do not dispute that the automobile involved in the accident was covered by the policy. With reference to coverage for " 'Garage Operations' other than covered 'auto,' " set out above, the policy clearly describes it as damages "caused by an 'accident' resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos.' " The same section also clearly describes the coverage for " 'Garage Operations'—Covered 'Autos' " as covering damages resulting from " 'garage operations' involving the ownership, maintenance or use of covered 'autos.' " Likewise, the policy also clearly describes what is meant by an aggregate limit in "Aggregate Limit of Insurance—'Garage Operations'—Other than Covered 'Autos' " as the most the company will pay for damages resulting from operations other than ownership, maintenance or use of covered

autos. When these provisions are read together, it is clear that the policy language "other than auto only aggregate" means that there is a $1,500,000 aggregate limit for accidents that do not involve the ownership, maintenance or use of a covered automobile and that "[o]ther than auto only" refers to accidents not involving a covered automobile. "Aggregate" is not an unusual or technical word, and it is not used as such in the policy.

While we have not been directed to, nor has our research revealed, a Missouri case on point, our decision finds support in the South Carolina case of *George v. Empire Fire and Marine Ins. Co.*, 336 S.C. 206, 519 S.E.2d 107 (1999), which interpreted a policy similar to that in the instant case. In *George*, an accident occurred involving an automobile covered by a garage operations insurance policy. 519 S.E.2d at 109. That policy defined "Garage Operations" with essentially the same language as in the policy under consideration in this case. *Id.* at 111. The declarations page of the *George* policy designated, by numerical code, what were "Covered Autos" under the liability coverage. *Id.* It also subdivided the coverage amounts for liability arising from garage operations into two categories: the statutory minimum of 15/30/5 for "auto only," and $1,000,000 for "other than auto only." *Id.* The trial court's entry of summary judgment declaring that the policy provided for $1,000,000 in coverage was reversed by the South Carolina Court of Appeals. The appellate court held that the accident was properly classified as "Garage Operations," but "must be further subclassified as 'Auto Only' because liability under the policy arose solely because of the ownership, maintenance, or use of a 'covered auto,'" thus limiting the coverage to the statutory minimum. *Id.* at 112.

In *George*, the trial court had also held that the policy was ambiguous because the terms "auto only" and "other than auto only" were not specifically defined in the policy. *Id.* The appellate court held, however, that the policy was not ambiguous, reasoning that the declarations page only extends liability coverage to certain covered autos that were listed by numerical references on the declarations page; "the only reasonable interpretation of 'Garage Operations—Auto Only' is 'Garage Operations—Covered Autos,' because the declarations page limits liability coverage to 'Covered Autos.'" It said:

> It would be illogical to read the policy so as to classify an accident involving the use of only a covered automobile as "Garage Operations Other than Auto Only." The policy's use of the term "Auto Only" clearly means "Covered Autos." To interpret the policy otherwise would attempt to extend coverage to non-covered autos which clearly was not intended by any of the parties. The policy is not ambiguous.

*Id.* at 113.[3]

The accident in this case involved the use of a covered automobile. Therefore, the $1,500,000 aggregate coverage for "other than auto only AGGREGATE" does not apply. Hence, the "per accident" limit of $500,000 is the applicable liability limit. Appellant's first point is therefore denied.

---

3. *George* also involved the issue of reformation of the policy language because of mutual mistake and an illegal provision under South Carolina law. *Id.* at 113–114. The appellate court found a genuine issue of material fact precluding summary judgment on the reformation issue. *Id.* at 115. The Supreme Court of South Carolina granted certiorari to determine the reformation issue only, and reversed. *George v. Empire Fire and Marine Ins. Co.*, 344 S.C. 582, 545 S.E.2d 500, 502, 506 (2001). It did not disturb the appellate court's finding on the interpretation issue. *Id.* at 501–506.

886

In his second point relied on, Appellant alternatively claims that the trial court erred in granting Hauler's motion for summary judgment because the insurance policy is clear on its face in that the declarations page provides for $1,500,000 in coverage for the claims of Appellant and Ms. Meyer. Appellant asserts that the limits contained in Hauler's Declarations page should govern because the Limit of Insurance—"Garage Operations"—Covered "Autos" does not reflect a different intention than that expressed on the Declarations page and therefore, the "other than auto only aggregate" limit of $1,500,000 should apply.

In support of this contention Appellant cites *Jackson v. Gen. Accident Ins. Co.*, 720 S.W.2d 428 (Mo.App. E.D.1986). In *Jackson,* the insurance policy in question listed a limit of $50,000 for underinsured motorists on its declarations page. *Id.* at 429. However, the limit of liability schedule in the policy was left blank. *Id.* The plaintiff contended that because the limits of liability were left blank on the schedule, there was no maximum limit of liability for underinsured motorist coverage. *Id.* The court found that there was no ambiguity in the policy and the limit on the declarations page controlled. *Id.* The court stated, "It is not reasonable to conclude that the blanks left in the Schedule section reflect a different intention than that clearly expressed on the Declarations page." *Id.*

Appellant's reliance on *Jackson* is misplaced. If *Jackson* is at all relevant to this case, it stands for the proposition that the amount listed on the declarations page can control. 720 S.W.2d at 429. However, the Amended Garage Coverage Form Declarations has two amounts listed: $500,000 per accident and $1,500,000 other than auto only aggregate. Perhaps *Jackson* would offer support if the $500,000 per accident limit were not listed on the policy declara-

tions form. But that is not the case. Furthermore, we have already determined, in our discussion of Appellant's first point, that the policy unambiguously provides for $500,000 in coverage per accident involving a covered automobile. Appellant's second point is denied.

We affirm the motion court's grant of summary judgment in favor of Respondent.

PREWITT and RAHMEYER, JJ., concur.